## IN THE MATTER OF BIDWELL

Docket No. 63090. Submitted April 20, 1983, at Lansing.—Decided October 10, 1983.

The Livingston Probate Court, Donald E. Rink, J., entered an order terminating the parental rights of Sandra Osiecki over her minor child, Raymond A. Bidwell. Osiecki appealed. *Held:*

The probate court failed to make factual findings or to state the basis for termination. Under the circumstances the Court of Appeals is not able to conduct a proper review. The case is remanded for a full dispositional hearing and complete findings of fact. Jurisdiction is retained and the findings of fact are to be forwarded to the Court of Appeals upon completion.

Remanded.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — BURDEN OF PROOF.

The state bears the burden of proving by clear and convincing evidence that a termination of parental rights is warranted.

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NEGLECT.

A permanent custody order terminating a parent's parental rights on the basis of neglect must be based on circumstances which establish or seriously threaten neglect of the child for the long-run future (MCL 712A.19a[e]; MSA 27.3178 [598.19a][e]).

*Sammie L. Shank,* guardian ad litem, for appellee.

*Kathleen M. Goetsch,* for appellant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 59 Am Jur 2d, Parent and Child §§ 5, 27.
Validity of state statute providing for termination of parental rights. 22 ALR4th 774.
[2] 24 Am Jur 2d, Divorce and Separation § 992.

Before: V. J. Brennan, P.J., and M. J. Kelly and N. J. Kaufman,* JJ.

V. J. Brennan, P.J. This case involves the termination of Sandra (Bidwell) Osiecki's parental rights over her minor child, Raymond Alfred Bidwell. An order permanently terminating respondent's parental rights was entered by the Livingston County Probate Court on February 22, 1982. Respondent appeals that order as of right.

The proceedings in the probate court commenced on March 18, 1980, when a petition was filed alleging that Raymond was subject to the provisions of MCL 712A.2(b); MSA 27.3178(598.2)(b) and that he was a dependent and neglected child.

A preliminary hearing was convened on March 26, 1980. The probate judge read the contents of the petition and advised respondent of her rights during the probate proceedings. The court granted an adjournment after respondent's request to be represented by counsel.

The preliminary hearing was reconvened on April 16, 1980. Respondent was represented by counsel at this and all subsequent proceedings. Respondent was again informed of her rights and the fact that any outgrowth of the hearing could result in termination of her parental rights. The probate judge informed respondent of the possible consequences that could follow if she admitted the allegations in the petition, including termination of parental rights. Respondent then admitted the allegations in the petition.

On examination by the prosecutor, respondent testified that she was not married at the present

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

time and had not been married at the time Raymond was conceived. Raymond was born February 17, 1978. She identified Daniel Smith as the father of the child, but she had not seen or heard from him for 1-1/2 years and did not know his current whereabouts. Smith had not publicly acknowledged paternity nor had he paid for any of the prenatal or delivery costs. Respondent testified that she had lived with Ricky Osiecki for eight months. Osiecki struck Raymond quite a few times. Respondent never saw Osiecki hit Raymond on any area other than the buttocks. She felt that Osiecki used excessive force. Approximately 1-1/2 months before this hearing, she attempted to stop Osiecki from abusing the child on two or three occasions. She did not see Osiecki strike the child after she had tried to stop him the last time. Respondent was not at home when Raymond was taken to the hospital on March 15, 1980. Osiecki told her that the child had fallen on a table in an attempt to get on the couch. While at the hospital, respondent saw bruises on Raymond's arms, legs, and face. However, she did not think that all of the bruises were caused by the fall and indicated that some bruises were the result of Osiecki's hitting the child. She stated that she was currently living with Osiecki and planned to continue living with him.

In response to questions by the court-appointed guardian ad litem, respondent stated that Osiecki had been employed for the past five months. Osiecki would babysit for Raymond while respondent was at work. He continued to care for the child after respondent was aware of the fact that he used excessive force towards Raymond. She indicated that she was going to take Raymond back to the babysitter after he left the hospital.

Respondent did not know what she would do in order to show the court that she was a fit mother, but when questioned by her own attorney she stated that she would follow the suggestions and program set up by the probate court.

Based upon the testimony taken at the hearing, the probate judge accepted respondent's admission to the allegations in the petition. The probate judge continued the child as a temporary ward of the court and ordered that he remain in foster care. The parties stipulated at this hearing to waive the requirement of a dispositional hearing within 28 days. By order dated April 26, 1980, respondent was ordered to make an appointment with the court psychologist and to take steps to learn proper parenting skills. The court also suggested that Ricky Osiecki see the court psychologist.

A dispositional hearing was held on August 14, 1980. Respondent did not attend this hearing, although her attorney was present. At that hearing, the guardian ad litem argued that although respondent and Osiecki had participated in six of eight counseling sessions, they had not done well. He also indicated that since Raymond was placed in foster care, respondent had only visited him on two occasions. He argued that the child was happy in his foster home and recommended that respondent's parental rights be terminated and that Raymond be placed for adoption. He stated that respondent's nonappearance at this hearing was a reflection of her lack of concern. Respondent's attorney stated that she had been unable to reach respondent and was concerned that possibly respondent had not received notice of the hearing. The court noted that the Department of Social Services report did not ask for or recommend

parental termination at that time. The judge continued Raymond as a temporary ward of the court for an additional period of up to six months. The judge indicated that it was up to respondent to prove to the judge that her intentions were in the best interest of the child by continuing counseling, continuing visitation, and seeking further family counseling. The judge also told respondent's counsel to inform her client that "if she doesn't shape up within six months or less from today's date, she's going to lose any and all rights that she has to this child".

A review hearing scheduled for August 11, 1981, was waived by all parties. The order indicated that a review hearing of the same nature would be held in approximately six months to more fully evaluate Raymond's progress.

A review hearing was held on February 22, 1982. The guardian ad litem, respondent, and respondent's counsel were present. No representative of the state was present at the hearing. The judge indicated that the purpose of the hearing was to determine whether to continue Raymond as a temporary ward or to terminate parental rights or just what was in the best interest of the child. It was after this hearing that the probate judge terminated respondent's parental rights. The evidence presented at the hearing is reflected in our discussion of the first issue.

Respondent's first claim on appeal is that the state failed to sustain the necessary burden of proof to justify termination of respondent's parental rights.

It is unclear whether this Court reviews parental termination cases *de novo* or whether we review the probate court's findings pursuant to a "clearly erroneous" standard. *In the Matter of*

*Mudge,* 116 Mich App 159, 161; 321 NW2d 878 (1982); *In re Arntz,* 125 Mich App 634; 336 NW2d 848 (1983). Nevertheless, under either standard, the failure of the probate court to make factual findings or to state the basis for termination renders review of this matter extremely difficult.

The state bears the burden of proving by clear and convincing evidence that termination of parental rights is warranted. *In the Matter of La-Flure,* 48 Mich App 377; 210 NW2d 482 (1973), *lv den* 390 Mich 814 (1973). The statutory authority of the probate court to make a child a permanent ward of the court, thereby terminating parental rights, is found in MCL 712A.19a; MSA 27.3178(598.19a). In this case, the probate court did not state which statutory provision it relied upon in terminating respondent's parental rights. Of the possible statutory bases, only two appear to be relevant as possibly applicable to the present case. The statute reads in pertinent part:

"Sec. 19a. Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:

\* \* \*

"(e) The parent or guardian is unable to provide a fit home for the child by reason of neglect.

"(f) The child has been in foster care in the temporary custody of the court on the basis of a neglect petition for a period of at least 2 years and upon rehearing the parents fail to establish a reasonable probability that they will be able to reestablish a proper home for the child within the following 12 months."

We first find that termination of respondent's

parental rights under subsection (f) was not appropriate.

At the time of the February 22, 1982, hearing, Raymond had been in foster care for just less than two years. Subsection (f) of § 19a indicates that termination may be effected when a parent fails to establish a reasonable probability that he or she will be able to re-establish a proper home after the child has been in foster care for *at least two years.* The statutory language of subsection (f) appears to require that the child, at a minimum, be under temporary custody for *two* years prior to termination under that subsection. Since that requirement was not met in this case, termination of parental rights under that subsection would not have been proper.

We must next determine whether termination of respondent's parental rights under subsection (e) was appropriate. The amount of neglect necessary to justify termination of parental rights pursuant to subsection (e) of § 19a is not capable of precise or exact definition. A permanent custody order must be based on circumstances which "establish or seriously threaten neglect of the child for the long-run future". *Fritts v Krugh,* 354 Mich 97, 114; 92 NW2d 604 (1958); *In the Matter of Baby X,* 97 Mich App 111; 293 NW2d 736 (1980). Although termination may occur at the initial hearing, the state has the burden of establishing, by clear and convincing evidence, that termination of parental rights is warranted. In the present case, approximately 23 months had elapsed between the initial filing of the petition and the termination order. Two review or dispositional hearings were scheduled within that period. As a result of those hearings, respondent was ordered to attend a counseling session in order to improve her parenting skills.

At the review hearing of February 22, 1982, a report was submitted to the probate court by Robert Dargel, M.S.W., a social worker. That report indicated that respondent and her now-husband attended six of eight counseling sessions from April 21, 1980, to July 21, 1980. In May, 1981, respondent began weekly sessions with the Livingston County Child and Family Services. Respondent participated in 15 individual treatment sessions. Respondent's husband participated in four individual sessions and the couple had three joint sessions. In addition, the social worker met with respondent and her son on three occasions.

The social worker stated that respondent had made appropriate use of the supportive aspects of treatment. However, the remainder of the report was negative as to respondent's progress in improving her parenting skills. The social worker felt that respondent placed responsibility on the therapist for progress in treatment. Additionally, the social worker stated that respondent had been unable to incorporate methods of verbally limiting the child's behavior and seemed to have little understanding of her son's developmental needs or of what behavior is age-appropriate. Further, the social worker opined that it seemed premature to consider returning respondent's son to her at that time since there was no guarantee that physical abuse would not be repeated.

Although the social worker's report was submitted to the probate court, and was the only evidence mentioned in the probate judge's opinion terminating respondent's parental rights, the social worker was not present at the hearing to testify and was, therefore, not cross-examined by respondent's attorney as to the bases of his opinions.

Also, at the review hearing of February 22, 1982, the guardian ad litem addressed the probate judge and indicated that a review of the previous two years of counseling by respondent and her now-husband (Ricky Osiecki) indicated that there had been no significant change in the attitude or parenting of these individuals. He recommended termination and spoke of the benefits of placing Raymond in an adoptive home. No further evidence or testimony was presented on behalf of the guardian ad litem or the state.

Respondent's attorney argued in opposition to termination of parental rights. There had been changes in respondent's circumstances during the past two years. Respondent had married Ricky Osiecki and moved into a new home. Osiecki had obtained work and respondent would be at home to care for the child. She indicated that respondent had attended classes at child and family services and had benefited from those classes.

Respondent testified that, through her classes, she had learned how to take care of Raymond a little better and how to feed him. She also read the book *Kids In And Out,* which had been given to her by Ricky Osiecki. She was not working at the current time and would be able to care for Raymond. When asked how she got along with Raymond on her visits, respondent replied that they got along fine. She also indicated that during one visit when Raymond had hit her, she slapped his hands.

On cross-examination by the guardian ad litem, respondent indicated that she visited her son in foster care for one hour approximately once a month or once every three weeks. Respondent admitted that when Raymond was living with her she had hit Raymond a couple of times but indicated that she did not use a belt.

Respondent's counsel suggested that respondent be given the opportunity to take her child home and that the probate court monitor the situation and then intervene and terminate parental rights if problems arose.

In terminating respondent's parental rights, the probate court relied exclusively upon the report of the social worker. It is important to note that, although the social worker thought that returning Raymond to respondent's care would be premature, he nevertheless did not recommend termination. Further, the court psychologist also did not recommend termination. The guardian ad litem had recommended termination based upon the social worker's statement that there had been "no significant change in the attitude or parenting" of respondent.

Because we feel that the probate court's findings of fact were not complete, and because of the nature of this case, we are not able to conduct a proper review. Therefore, we remand for a full dispositional hearing and complete findings of fact. All of the requirements for appropriate notices and appearances in accordance with the statutes controlling termination of parental rights shall be followed. The hearing shall be conducted within 30 days of the date of this opinion. The probate court shall forward to this Court complete findings of fact within 15 days of the close of the hearing.

We retain jurisdiction.