*In re* SMEBAK

Docket No. 90503. Submitted February 11, 1987, at Detroit. Decided May 5, 1987.

The Wayne County Probate Court, Y. Gladys Barsamian, J., terminated the parental rights of Pamela Smebak (respondent), to her daughter, Vivian Smebak, on grounds of neglect, finding that respondent was unable to provide a fit home for the child because of mental illness. Respondent appealed.

The Court of Appeals *held:*

1. The fact that the child had not been in the temporary custody of the court for a period of two years prior to the court's termination of respondent's parental rights does not preclude the court from terminating those rights. The two-year provision relied on by respondent is not a minimum jurisdictional time.

2. There was ample factual support for a finding of neglect, and the probate court did not err in finding respondent unable to provide a future home for her child.

3. Issues raised on appeal by the attorney for the minor child were not timely raised and will not be addressed. The child was accorded the relief sought, therefore no injustice arises from the refusal to address those issues.

Affirmed.

1. Parent and Child — Termination of Parental Rights — Mental Illness or Deficiency.

The statute providing for the termination of parental rights of parents unable to provide proper care because of mental illness or deficiency requires only that the mental deficiency preclude proper care of the child for a period of two years without likelihood of improvement in the near future; it does not require that such a period must lapse before termination can be effected (MCL 712A.19a[c]; MSA 21.3178[598.19a][c]).

References

Am Jur 2d, Parent and Child §§ 39, 40.

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

Mental illness and the like of parents as ground for adoption of their children. 45 ALR2d 1379.

2. P<small>ARENT AND</small> C<small>HILD</small> — C<small>USTODY</small> — E<small>VIDENCE</small>.

How a parent treats one child is probative of how the parent may treat other children.

3. P<small>ARENT AND</small> C<small>HILD</small> — T<small>ERMINATION OF</small> P<small>ARENTAL</small> R<small>IGHTS</small> — A<small>P-</small>
P<small>EAL</small> — F<small>INDINGS OF</small> F<small>ACT</small>.

Findings of fact which support termination of parental rights will not be reversed unless they are clearly erroneous.

*John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Susan Randolph,* Assistant Prosecuting Attorney, for petitioner.

*Ina G. Zeemering,* for respondent.

Before: D<small>ANHOF</small>, C.J., and W<small>EAVER</small> and J. M. B<small>ATZER</small>,* JJ.

W<small>EAVER</small>, J. Respondent appeals from a probate court order terminating her parental rights to her minor child. We affirm.

Respondent, Pamela Smebak, also known as Pamela Shaheen, gave birth to her child, Vivian, on May 22, 1984, while she was a patient at Detroit Psychiatric Institute. She had been brought there by the police on May 16, 1984, after abducting a baby. On May 24, 1984, the Department of Social Services applied for a petition to place the baby in temporary foster care. A neglect petition was filed on June 5, 1984, but on August 24, 1984, D<small>SS</small> amended it to ask for permanent custody. At a hearing held on September 18, 1984, the Wayne County Probate Court referee denied respondent's request to consider only temporary custody and granted the D<small>SS</small> motion to amend. Respondent was given visitation rights.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Permanent custody proceedings comprised numerous hearings spanning over one and one-half years. Respondent was usually present with her attorney, and respondent's guardian ad litem appeared at all of the hearings. Also present were representatives for DSS, the prosecutor's office, and the child. Respondent's mother and stepfather, Mr. and Mrs. Pokoyoway, attended many of the proceedings as well.

At the hearings, there was testimony by a psychiatrist from Ypsilanti Regional Psychiatric Hospital, a psychiatry resident at Detroit Psychiatric Institute, a psychology intern, two DSS caseworkers, and respondent herself. The testimony revealed that respondent was paranoid, delusional and psychotic; that her long history of severe mental illness had begun in her twenties and had required frequent hospitalization; that her psychiatric difficulties were thought to have a possible organic origin involving brain deterioration; that her condition was considered incurable and her prognosis poor; that she had been released in December, 1982, from the Ypsilanti hospital to the care of her mother because she could not care for herself; and that, after Vivian's birth, she had been released to structured adult residential care because she was still unable to care for herself. Although respondent asserts that she is married to and lives with a John Shaheen in Dearborn, Michigan, there is no evidence of such a marriage, and she in fact resides at Northville State Hospital.

Testimony also revealed that her older child, Maria, born April 22, 1979, had become a temporary ward of the juvenile division of the Lenawee County Probate Court on September 2, 1982, due to respondent's mental disability; that the child had been severely psychologically traumatized and would regress while in the care of her mother;

that the child was subsequently placed with her maternal grandparents, Mr. and Mrs. Pokoyoway, where she remains; and that the grandparents cannot also provide for Vivian, presently or in the future, although they have shown an interest in her welfare. There are no other known relatives able or willing to care for the baby. Although two names—Michael Smebak and John Shaheen—have been given as alleged putative fathers, no one has been able to locate either of them, and no paternal figure has been identified with certainty.

At the final hearing on January 2, 1986, the referee terminated all parental rights of respondent and any putative father pursuant to MCL 712A.2(b)(1); MSA 27.3178(598.2)(b)(1) and MCL 712A.19a(c) and (f); MSA 27.3178(598.19a)(c) and (f). An order was subsequently entered by the Wayne County Probate Court judge, which was also affirmed in a petition for review.

On appeal, respondent asserts (1) lack of probate court jurisdiction, (2) error in finding respondent unable to provide a future home for her child, and (3) insufficient factual support for a finding of neglect.

I

Respondent maintains that the court was without jurisdiction to terminate parental rights because the child had not been in the court's temporary custody for a minimum of two years. This is not the case.

The probate court found respondent unable to provide a fit home for Vivian under MCL 712A.2(b)(1); MSA 27.3178 (598.2)(b)(1) and MCL 712A.19a(c) and (f); MSA 27.3178(598.19a)(c) and (f). Section 2(b)(1), which confers upon the juvenile

division of the Michigan probate courts jurisdictional power over minor children:

> [w]hose parent or other person legally responsible for the care and maintenance of the child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical, or other care necessary for his or her health or morals, or who is deprived of emotional well-being, or who is abandoned by his or her parents, guardian, or other custodian, or who is otherwise without proper custody or guardianship.

Under this statute, the probate court properly assumed jurisdiction over the minor child.

Sections 19a(c) and (f) state:

> Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:
>
> *   *   *
>
> (c) A parent or guardian of the child is unable to provide proper care and custody for a period in excess of 2 years because of a mental deficiency or mental illness, without a reasonable expectation that the parent will be able to assume care and custody of the child within a reasonable length of time considering the age of the child.
>
> *   *   *
>
> (f) The child has been in foster care in the temporary custody of the court on the basis of a neglect petition for a period of at least 2 years and upon rehearing the parents fail to establish a reasonable probability that they will be able to reestablish a proper home for the child within the following 12 months.

Respondent relies on a case which was reversed by our state Supreme Court on the issue of two-year temporary custody. *In re Delbert Kidder, Jr.,* 59 Mich App 204; 229 NW2d 380 (1975), rev'd 393 Mich 819 (1975). This Court had held that there could be no final termination of rights pursuant to § 19a unless the child had been in temporary court custody for a minimum of two years and the state established parental inability to reestablish a proper home for the child. 59 Mich App 210. This reasoning was specifically disapproved and the case was reversed and remanded by our Supreme Court, which said:

> The two year provision in § 19a is *not* a minimum jurisdictional time during which a child *must* remain in foster care prior to proceeding to a termination of parental rights. One of the possible criteria for termination is continuing neglect. Sec. 19a provides that two years of foster care constitute prima facie evidence of continuing neglect. [393 Mich 819-820.]

Similarly, this Court has subsequently interpreted § 19a(c)—termination for mental deficiency or illness—as requiring only that mental deficiency preclude proper care for two years without the likelihood of improvement; hence the two-year period need not elapse before a termination of parental rights can be effected.[1] *In re Bailey,* 125 Mich App 522, 528-529; 336 NW2d 499 (1983).

Therefore, the two-year provision of § 19a is not a minimum jurisdictional time and respondent's argument is without merit.

---

[1] We are mindful of a conflict in the decisions of this Court represented by *In re Bidwell,* 129 Mich App 499, 505; 342 NW2d 82 (1983). We note, however, that the Supreme Court's ruling in *Kidder* takes precedence over *Bidwell.*

II

Respondent next argues that it was error for the probate court to find that respondent's future recovery was not foreseeable and that a child in her care would be neglected and dependent into the long-term future. Respondent also argues insufficient factual support for a finding of neglect. We disagree with both of these contentions.

Evidence was overwhelming in this case of respondent's psychiatric difficulty and her corresponding inability to care for a child. There can be no doubt that her mental illness has been long-term. There is also no doubt that her prognosis for future improvement is poor, rendered even more so by the suspected organic basis for her difficulty and corresponding evidence of brain deterioration which appear to be hereditary. Respondent has been diagnosed as a paranoid psychotic and is presently so incapable of caring for herself that she must reside at an institution. Psychiatric testimony indicated that she will need such care, with more than minimal supervision, for more than two years and probably indefinitely.

Testimony has also established that respondent's inability to care for her other child, Maria, caused that child's placement in foster care. How a parent treats one child is probative of how the parent may treat other children. *In re LaFlure,* 48 Mich App 377, 392; 210 NW2d 482 (1973), lv den 390 Mich 814 (1973). Although such evidence is not conclusive or automatically determinative, *In re Kantola,* 139 Mich App 23, 28; 361 NW2d 20 (1984), there is not a shred of evidence that respondent is any more capable of caring for a child now than she was when Maria was placed in foster care. On the contrary, the evidence is that respondent cannot even care for herself, let alone an

infant who will make increasing demands upon her. Further, she has been unable to establish paternity, has no known residence, and has no relatives able and willing to care for the baby.

Findings of fact which support termination of parental rights will not be reversed unless they are clearly erroneous. *In re Cornet,* 422 Mich 274, 277; 373 NW2d 536 (1985). Even if there is evidence to support them, findings are considered clearly erroneous when, on the basis of all the evidence, the reviewing court develops the definite and firm conviction that a mistake was made. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

In this case, we are not left with the definite and firm conviction that a mistake was made. The evidence overwhelmingly supports termination of parental rights under §§ 19a(c) and (f). There was ample factual support for a finding of neglect, and the probate court did not err in finding respondent unable to provide a future home for her child.

We find it unnecessary to address issues raised on appeal by the attorney for the minor child, since these arguments were not timely raised. *Bajis v Dearborn,* 151 Mich App 533, 536; 391 NW2d 401 (1986). Because the minor child's attorney previously requested the termination of respondent's parental rights and was accorded that relief, no injustice can arise from our refusal to review this claim.

Affirmed.