*In re* GASS

Docket No. 103392. Submitted April 19, 1988, at Lansing. Decided
December 5, 1988.

The Midland County Probate Court, Donna T. Morris, J., termi-
nated the parental rights of Tamera Lou Gass to her infant
son, Kevin Del Gass, on a petition filed by the Department of
Social Services charging neglect based on respondent's inability
to provide proper care because of mental illness or mental
deficiency. Respondent appealed.

The Court of Appeals *held:*

1. The probate court properly assumed jurisdiction over
respondent's child. The allegations in the petition were proven
by a preponderance of the evidence and there was no error at
the adjudicative hearing such that, but for the error, there
would have been an insufficient basis for the probate court to
assume jurisdiction.

2. The statute providing for the termination of parental
rights of a parent unable to provide proper care because of
mental illness or deficiency requires only that the mental
deficiency preclude proper care of the child for a period of two
years without likelihood of improvement in the near future.
The statute does not, as respondent claimed, require that such
a period must lapse before termination can be effected.

3. Sufficient evidence was presented to establish that respon-
dent is prevented from providing proper care to her child
because of mental illness and mental deficiency and that she
will be unable to provide proper care within a reasonable
period of time considering the child's age. The probate court
did not err in terminating respondent's parental rights.

Affirmed.

1. INFANTS — PROBATE COURT — JURISDICTION — APPEAL — COLLAT-
ERAL ATTACK.

A probate court's assumption of jurisdiction over a minor child
following an adjudicative hearing is subject to collateral attack.

REFERENCES

Am Jur 2d, Parent and Child §§ 34, 35.
Validity of state statute providing for termination of parental
rights. 22 ALR4th 774.

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — AP-
     PEAL — FINDINGS OF FACT.
     Findings of fact which support termination of parental rights will
     not be reversed unless they are clearly erroneous.

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — MEN-
     TAL ILLNESS OR DEFICIENCY.
     The statute providing for the termination of parental rights of a
     parent unable to provide proper care because of mental illness
     or deficiency requires only that the mental deficiency preclude
     proper care of the child for a period of two years without
     likelihood of improvement in the near future; it does not
     require that such a period must lapse before termination can
     be effected (MCL 712A.19a[c]; MSA 21.317[598.19a][c]).

*Gerald L. White,* Prosecuting Attorney, and *Stephen E. Durance,* Assistant Prosecuting Attorney, for petitioner.

*Peter A. Poznak,* for respondent.

Before: KELLY, P.J., and SULLIVAN and M. J. SHAMO,* JJ.

SULLIVAN, J. Respondent, Tamera Lou Gass, appeals as of right from an August 31, 1987, probate court order terminating her parental rights as to her son Kevin Del Gass, born June 19, 1985. We affirm.

On November 22, 1985, the Department of Social Services filed a petition requesting the probate court to assume jurisdiction over Kevin on the basis of neglect.

Following an adjudicatory hearing in January, 1986, the court assumed jurisdiction and Kevin was made a temporary ward of the court.

On June 17, 1987, the DSS filed a petition to terminate respondent's parental rights, alleging mental illness or deficiency. A hearing was held in

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

July and August, 1987, after which the court issued its written opinion and order terminating respondent's parental rights.

Respondent suffers from a severe seizure disorder dating back to when she was about eighteen months old. Although the etiology is unknown in her case, epilepsy is an organic illness of the brain. At the time of trial, respondent had not had a seizure since about February, 1987.

On appeal, respondent asserts (1) lack of probate court jurisdiction over the minor child and (2) insufficient factual support for a finding of mental deficiency or mental retardation and a finding that respondent would be unable to provide proper care within a reasonable period of time.

Respondent initially challenges the propriety of the probate court's assumption of jurisdiction over the minor child. We find no merit to this claim.

We begin our analysis by first addressing a conflict in this Court over the propriety of reviewing an issue arising from an adjudicative hearing in an appeal to this Court. We are of the opinion that questions arising from the adjudicative hearing involve subject-matter jurisdiction and, thus, may always be raised, even on collateral attack. *In re Emmons,* 165 Mich App 701, 704; 419 NW2d 449 (1988); *In re Ferris,* 151 Mich App 736; 391 NW2d 468 (1986); but see *In re Adrianson,* 105 Mich App 300; 306 NW2d 487 (1981), and *In re Dupras,* 140 Mich App 171; 363 NW2d 26 (1984).

Accordingly, our inquiry is whether any error alleged to have occurred at the adjudicative hearing was of such a magnitude that, but for the error, there would have been an insufficient basis for the probate court to assume jurisdiction. *Ferris, supra* at 744. We find no such error.

We have thoroughly reviewed the record and conclude that the allegations contained in the

petition were proven by a preponderance of the evidence. Thus, the court's assumption of jurisdiction over the minor child was proper. MCR 5.908.

In this case, the court found that respondent suffers from a mental illness and a mental deficiency which is substantial, prolonged and adversely affects parenting. The court's basis for termination was MCL 712A.19a(c); MSA 27.3178(598.19a)(c), which provides:

> Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:
>
> * * *
>
> (c) A parent or guardian of the child is unable to provide proper care and custody for a period in excess of 2 years because of a mental deficiency or mental illness, without a reasonable expectation that the parent will be able to assume care and custody of the child within a reasonable length of time considering the age of the child.

In termination cases, we review the probate court's finding under the clearly erroneous standard. *In re Cornet,* 422 Mich 274, 277; 373 NW2d 536 (1985). Even if there is evidence to support them, findings are considered clearly erroneous when, on the basis of all the evidence, the reviewing court develops the definite and firm conviction that a mistake has been made. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976); *In re Smebak,* 160 Mich App 122; 408 NW2d 117 (1987).

First, respondent relies on the case of *In re Youmans,* 156 Mich App 679; 401 NW2d 905 (1986), lv den 428 Mich 871 (1987), and argues that

the probate court erred by terminating her parental rights prior to the two years mentioned in the statute. MCL 712A.19a(c); MSA 27.3178(598.19a)(c). Although we are mindful of the conflict in this Court on this issue, we believe that the two-year provision is not a jurisdictional time limit on the probate court's authority to terminate respondent's parental rights if the court anticipates that two years will elapse and there will be no change in the parent's ability to care for the child. *In re Kellogg,* 157 Mich App 148; 403 NW2d 111 (1987); *In re Smebak, supra; In re Bailey,* 125 Mich App 522, 336 NW2d 499 (1983); *In re Brown,* 139 Mich App 17; 360 NW2d 327 (1984). But see *In re Youmans, supra; In re Bidwell,* 129 Mich App 499, 505; 342 NW2d 82 (1983).

Respondent also argues that insufficient evidence was presented to establish that she suffered from mental deficiency or mental illness as those terms are used in MCL 712A.19a(c); MSA 27.3178(498.19a)(c). We disagree.

In *In re McDuel,* 142 Mich App 479; 369 NW2d 912 (1985), this Court used the term "mental deficiency" synonymously with low intelligence or mental retardation. *Id.* at 486-487. The Court additionally noted that the Legislature has elsewhere defined "mental illness" as a "substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 300.1400a; MSA 14.800(400a). We find ample evidence to support the court's findings that respondent was mentally deficient and that she suffered from a mental illness which interfered with the care of her child, and that there is no reasonable expectation that respondent will be able to assume the care and custody of Kevin

within a reasonable length of time considering the age of the child.

After evaluating respondent, clinical psychologist Dr. Thomas Marks concluded that she was either mentally retarded or borderline retarded and, in addition, suffered from a severe personality disorder which he described as a disorder of thought and mood which significantly impairs judgment, behavior and capacity to recognize reality or ability to cope with the ordinary demands of life. He also found respondent to have a learning disability and pronounced intellectual deficits.

Dr. Kamal Sadjadpour, a board-certified neurologist, treated respondent from 1974 to 1981 and then again in 1986. In his opinion, respondent has a severe seizure disorder which is organic in nature, is emotionally unstable and is slightly retarded.

Dr. Janusz Zielinski specializes in psychiatry and neurology with a subspecialty in epileptology. After evaluating her in May, 1986, Dr. Zielinski diagnosed respondent as having temporal lobe epilepsy in addition to having other manifestations of brain involvement which constitute very mild, but still, borderline normal intellectual capacity. Respondent also suffers from an organic personality syndrome. In his opinion, her organic personality problems and her epilepsy are the result of underlying damage to the brain.

Finally, psychologist Dr. Martin Shindeling, who had conducted a neuropsychological examination of respondent on April 30, 1987, rendered his opinion as well. He, like the others, found respondent to have a deficiency in intellectual functioning which he characterized as borderline retarded although he noted that she is not legally retarded. She has profound problems in the areas of memory, social judgment, reasoning and verbal skills.

He, too, believes respondent has organic brain damage which is the major cause of her personality problems.

Although perhaps differing slightly on the nomenclature to be given, it is clear that all of the experts concur as to the results; respondent has pronounced intellectual deficits which they uniformly agree severely affect her ability to make appropriate judgments. Her continuing inadequacies in this area render her unable to identify and respond to the changing needs of her child. Although highly motivated to keep Kevin, it is abundantly clear that respondent does not possess the parenting skills with which she can provide for the physical, emotional and safety needs of her child.

There is also a serious concern that respondent has an inability to appreciate her own limitations, thus making the potential for successful treatment in the near future improbable. Indeed, testimony was consistent that respondent cannot and would not be able to adequately parent a child in the near future, if at all. Dr. Marks was pessimistic when asked about her prognosis, indicating that, in light of the complexity of her problems and that her mental illness and organic pathology are inextricably related, any change was highly unlikely. Moreover, he believes that her problems are beyond the scope of pychotherapy or counseling.

Similarly, Dr. Sadjadpour opined essentially the same sentiments. Dr. Sadjadpour stated that respondent's past history of noncompliance with medical advice renders it doubtful that she could safely parent a child. To respondent's credit, Dr. Sadjadpour last treated her on or about December 19, 1986, and at the time of trial respondent's treating physician, Dr. Samuel Kurn, testified that she had been compliant in taking her medications.

However, it is noteworthy that Dr. Kurn did not begin treating respondent until March 18, 1987.

Dr. Zielinski's future projection was bleak as well. He gave a guarded prognosis because of respondent's interrelated problems of personality disorder and low intelligence. In his opinion, if she took her medication properly there would be an immediately noticeable improvement in the seizures. However, it would be two to three years, at least, before she would be totally competent.

Dr. Shindeling similarly opined that respondent's chances of significantly improving, given her history, are very remote and that any change would be unlikely.

Finally, we have also reviewed the testimony of persons in the support services as well as the testimony of those who have had varying degrees of contact with respondent over the years. In essence, it is their belief that respondent has exhausted available resources and all agree that she manifests a deficiency in the vital parenting skills of making appropriate judgments and adapting to changes.

In short, the record reveals that respondent, herself, needs close supervision to ensure that she regularly and correctly takes her medication. She cannot assume care and custody of Kevin nor do we believe she will be able to do so within a reasonable period of time considering the child's age.

As in all termination cases, we are mindful that, as a result of our decision, respondent's rights as to her son will be permanently severed. We are also acutely aware that respondent is a good housekeeper, maintains excellent personal hygiene, and is genuinely motivated to keep her son. Admittedly, we find our disposition very troublesome in light of these positive characteristics.

However, our review in termination cases is limited, *In re Cornet, supra,* and we believe that the findings of a trial judge should be given great deference in termination cases as he has presided over the case from start to finish and has had plentiful opportunities to assess the credibility of witnesses and critically evaluate all the evidence. See *In re Kellogg, supra,* p 158.

We cannot say, given the facts of this case, that we are left with a definite and firm conviction that a mistake has been made.

Affirmed.