*In re* WAITE

Docket No. 126249. Submitted November 8, 1990, at Grand Rapids. Decided April 1, 1991, at 9:25 A.M.

The Department of Social Services filed a two-count petition in the Montcalm County Probate Court which alleged that the court had jurisdiction of Bruce A. Waite, the minor son of the respondent, Melinda Waite. At an adjudicative hearing, the respondent waived further proceedings and agreed to admit to the count alleging that the child came within the court's jurisdiction on the basis of parental neglect. The respondent was advised of her rights and testified that the child apparently had been injured while he had been in the care of a friend. The court, John R. Vusich, J., assumed jurisdiction of the child on the basis of parental neglect. Following a subsequent dispositional hearing, the court, Edward L. Skinner, J., terminated the respondent's parental rights. The respondent appealed.

The Court of Appeals *held:*

Because the probate court failed to elicit an adequate factual showing of neglect by the respondent, it erred in assuming jurisdiction of the child, rendering all proceedings void ab initio.

1. While a court's jurisdiction generally is determined by the legal adequacy of the allegations of a jurisdictional basis set forth in the pleadings, the Michigan Supreme Court has specifically held that a probate court, in proceedings to terminate parental rights, may assume jurisdiction over the child only where there is an adequate factual showing at the adjudicative hearing of neglect. Because the question relates to the probate court's subject-matter jurisdiction, it may be raised for the first time in this appeal of the termination order. The evidence adduced at the adjudicative hearing fails to establish that the respondent's leaving of the child with the friend constituted neglect. Accordingly, the court erred in assuming jurisdiction of the child.

2. While the probate court's order terminating the respon-

REFERENCES

Am Jur 2d, Parent and Child §§ 34, 35.

See the Index to Annotations under Appeal and Error; Termination of Parental Rights.

dent's parental rights was supported by clear and convincing evidence, the failure to acquire jurisdiction of the child rendered all proceedings void ab initio, requiring vacation of the order terminating the respondent's parental rights.

Reversed.

NEFF, P.J., concurring in the result, stated that the Court should not attempt to resolve in this case the conflict in the Court of Appeals regarding whether errors during the adjudicative stage of a probate court proceeding to terminate parental rights may be collaterally attacked.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — ADMISSIONS — STANDARD OF REVIEW.

The adequacy of the advice of rights required for acceptance of a plea of admission in a proceeding in probate court to terminate parental rights is reviewed on appeal under the same standard of review used to determine the adequacy of advice of rights in proceedings involving a criminal guilty plea (MCR 5.971[B]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — JURISDICTION — APPEAL.

A probate court's jurisdiction of a child in a proceeding to terminate parental rights may be raised for the first time on appeal; jurisdiction assumed on the basis of parental neglect must be supported at the adjudicative hearing by evidence of neglect, and the absence of such evidence deprives the court of jurisdiction (MCL 712A.2[b][1]; MSA 27.3178[598.2][b][1]).

*Bruce E. Basom,* Prosecuting Attorney, for the petitioner.

*Thomas L. Wilson,* Guardian at litem of Bruce A. Waite.

*Donald R. Hemingsen,* for the respondent.

Before: NEFF, P.J., and MAHER and HOOD, JJ.

MAHER, J. Respondent appeals as of right from a January 16, 1990, probate court order terminating her parental rights pursuant to MCL 712A.19b(3)(b)(ii) and (c)(i); MSA 27.3178(598.19b)(3)(b)(ii) and (c)(i). Respondent raises issues on appeal relating both to the initial adjudicative hearing and to the

hearing terminating her parental rights. We reverse.

On August 31, 1988, a petition was filed with the Montcalm County Probate Court alleging that respondent's son, who was born on July 19, 1988, had been hospitalized on August 30, 1988, and was diagnosed as having several bruises and a fracture of the right femur, suggesting the use of excessive force. At a hearing on August 31, respondent explained that on August 27, 1988, she brought her son to the house of Kim Smith, a friend of hers, where Smith took care of him until August 29, when respondent returned and noticed that his leg was swollen. He was taken to the hospital later that evening. The trial court, indicating, "I don't know what we got [sic] here," adjourned further proceedings until September 15, 1988, so that further investigation could be conducted and an attorney could be appointed for respondent. In the meantime, the court entered a temporary order prohibiting the child's removal from the hospital without prior court approval.

On September 15, 1988, respondent waived further proceedings and agreed to offer an admission to count one of a two-count petition alleging that respondent's son came within the provisions of MCL 712A.2(b); MSA 27.3178(598.2)(b). Respondent, who was represented by an attorney, was advised of her rights, and, after the court took her testimony, her plea of admission was accepted. The court then entered its order adjudging respondent's son a temporary ward of the court and placing him in foster care.

Several review hearings were held subsequent to the court's assumption of jurisdiction over respondent's son, and he was continued as a ward of the court. After a hearing on November 13, 1989, the court authorized the filing of a petition seeking

permanent termination of respondent's parental rights, and a termination hearing was held on December 19, 1989, following which respondent's parental rights were terminated.

Respondent first argues that reversal of the order terminating her parental rights is required because of error during the initial adjudicative stage. Specifically, respondent argues that she was not adequately advised of her rights at the September 15, 1988, hearing and, further, that her testimony was insufficient to support the trial court's finding that her son came within the provisions of MCL 712A.2(b)(1); MSA 27.3178(598.2)(b)(1). After first discussing the merits of each of these claims, we will discuss the propriety of allowing such claims to be challenged collaterally during an appeal as of right from an order terminating parental rights.

Concerning respondent's first argument, respondent contends that her plea of admission was defective because she was not advised of her right to have the court subpoena witnesses in her favor. MCR 5.971(B)(3)(e). The record reveals that respondent, who was also represented by counsel, was specifically advised that she had the right to "cross-examine all the witnesses called" and to "call witnesses on [her] own behalf." She specifically acknowledged her understanding of these rights. Applying a standard analogous to that used in reviewing the adequacy of advice of rights during criminal guilty pleas, see *People v Gren*, 152 Mich App 20, 24; 391 NW2d 508 (1986), we are satisfied from the record before us that respondent understood both the nature of the proceedings and that, by offering her plea, she was knowingly and voluntarily giving up her right to a trial and the rights incident thereto. Thus, we conclude that respondent's plea of admission was an understand-

ing one and, therefore, was not defective on the basis of inadequate advice of rights.

Regarding respondent's second argument, MCR 5.971(C)(2) provides in relevant part:

> The court shall not accept a plea of admission or of no contest without establishing support for a finding that the child comes within the jurisdiction of the court.

In this case, the essence of the allegations in the petition were that respondent either caused the injuries to her son or negligently allowed them to occur through the selection of inappropriate persons to care for her child.

In eliciting respondent's plea of admission, the probate court questioned respondent about her son's injuries. Respondent explained that she didn't know how the injuries occurred but that they apparently occurred while her son was being cared for by her friend, Kim Smith, sometime between August 27 and 30. The court asked respondent if she knew whether Smith could properly take care of children, and respondent replied that she thought so because Smith had two children of her own. Thereafter, the court asked respondent's attorney for help with other facts. Respondent was asked if she acknowledged that placing the child with Kim Smith may have been a mistake. Although respondent replied "um huh," when she was asked why this was the case, she responded: "Well, she locks her kids in the room—in the bedroom. . . . *I didn't know that at first, but now I do.*" The court then asked respondent, "Do you think you were negligent?" and respondent replied, "Yeah." However, respondent did not explain why she thought this was so. The court also asked whether anybody else helped take care of

the child, and respondent merely indicated that another friend, Margie, sometimes came over and helped when she had trouble getting her son to sleep.

MCL 712A.2; MSA 27.3178(598.2) provides, in pertinent part:

> The juvenile division of the probate court shall have the following authority and jurisdiction:
>
> \* \* \*
>
> (b) Jurisdiction in proceedings concerning any child under 18 years of age found within the county:
>
> (1) Whose parent or other person legally responsible for the care and maintenance of the child, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .
>
> \* \* \*
>
> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, or other custodian, is an unfit place for the child to live in.

Although the petition in this case originally alleged that respondent's son came within the provisions of both subsections (b)(1) and (2), all allegations pertaining to subsection (b)(2) were dismissed before acceptance of respondent's plea. The probate court then found that respondent's son came within the provisions of subsection (b)(1) pursuant to the language relating to neglect or the refusal to provide proper or necessary care. Specifically, it was the court's finding that respondent

"did neglect to provide proper care" because she allowed her child "to be taken care of by other persons and the injuries did result."

On the basis of this record, we are unable to conclude that sufficient facts were established to support a conclusion that respondent's son came within the provisions of MCL 712A.2(b)(1); MSA 27.3178(598.2)(b)(1) because of neglect or a refusal to provide proper or necessary care. The mere fact that an injury resulted does not necessarily establish that the injury was attributable to a failure to provide proper care. The facts in this case merely showed that respondent entrusted the temporary care of her son to a friend who she thought could take proper care of her child inasmuch as this friend had two children of her own. The testimony did not indicate that, at the time respondent entrusted her son to her friend's temporary care, she had any basis to believe that her friend either would not or could not provide proper care. Indeed, the court was unable to find whether respondent's friend, or any other person for that matter, was in fact inappropriate, as reflected by the court's statement: "I'm not so sure able [sic] or maybe they are able—I have no idea—But I'll accept the admission at this time." Additionally, the record shows that when respondent did return and notice that her son was injured, she took him to the hospital later that same day. Although we note that respondent did acknowledge being "negligent," she did so only in response to the court's leading question regarding this conclusion. The fact remains, however, that the record is devoid of underlying facts establishing a basis for such a conclusion.

Accordingly, on the basis of the record before us, we conclude that the trial court erred in finding that respondent's son came within the provisions

of subsection 2(b)(1). Nevertheless, the question remains whether this error at the adjudicative stage may be properly attacked in the instant appeal.

In this case, a direct appeal was available from the probate court's order of September 15, 1988, adjudging respondent's son a ward of the court and placing him in foster care. See MCR 5.993; MCL 600.861, 600.863; MSA 27A.861, 27A.863. No appeal was taken. Consequently, issues arising from the September 15, 1988, adjudicative hearing are collateral. Currently, there is a split among panels of this Court regarding whether errors at the adjudicative stage may be collaterally attacked during an appeal of right to this Court from an order of termination.

Initially, two panels of this Court concluded that errors during the adjudicative stage could only be challenged on direct appeal, not collaterally. *In re Adrianson,* 105 Mich App 300; 306 NW2d 487 (1981); *In re Dupras,* 140 Mich App 171; 363 NW2d 26 (1984). Subsequently, however, another panel decided *In re Ferris,* 151 Mich App 736, 744; 391 NW2d 468 (1986), and held that errors during the adjudicative stage were subject to collateral attack during an appeal of right from an order terminating parental rights. Subsequent decisions have adhered to the *Ferris* view. *In re Emmons,* 165 Mich App 701, 704; 419 NW2d 449 (1988); *In re Gass,* 173 Mich App 444, 446; 434 NW2d 427 (1988).

Despite their contrary conclusions, an analysis of each of the foregoing decisions reveals agreement with respect to the fact that the propriety of permitting collateral attacks is premised upon the issue of subject-matter jurisdiction. In this respect, we are in accord with the decisions.

The term jurisdiction refers to the power of a

court to act and the authority a court has to hear and determine a case. *State Highway Comm'r v Gulf Oil Corp,* 377 Mich 309, 312-313; 140 NW2d 500 (1966). When a court is without jurisdiction of the subject matter, its acts and proceedings are of no force and validity; they are a mere nullity and are void. *In re Hague,* 412 Mich 532, 544; 315 NW2d 524 (1982); *Fox v Bd of Regents of Univ of Michigan,* 375 Mich 238, 242; 134 NW2d 146 (1965). Thus, an order entered without jurisdiction may be challenged collaterally as well as directly. *Shane v Hackney,* 341 Mich 91; 67 NW2d 256 (1954); *Attorney General v Ambassador Ins Co,* 166 Mich App 687, 696; 421 NW2d 271 (1988). However, when not appealed, a decision of a court having jurisdiction is final and cannot be collaterally attacked. *S S Aircraft Co v Piper Aircraft Corp,* 159 Mich App 389, 393; 406 NW2d 304 (1987).

Where *Adrianson* and *Dupras* disagree with *Ferris* is their respective conclusions concerning which issues are jurisdictional in the sense that the probate court's subject-matter jurisdiction is affected.

*Adrianson* and *Dupras* distinguished challenges to the adequacy of the allegations in the petition itself and challenges involving the actual adjudicative proceedings. As explained in *Dupras, supra,* p 173:

> The *Adrianson* Court concluded that the issue of the legal adequacy of the allegations in the petition went to the probate court's complete lack of jurisdiction and that, therefore, the probate court's determination to take jurisdiction based on inadequate allegations was void *ab initio.* Such an issue could therefore be raised in either a direct or collateral appeal. However, a challenge to the sufficiency of the evidence introduced during the

adjudicative stage constituted a challenge to the probate court's exercise of jurisdiction and could therefore only be challenged in a direct appeal.

Thus, under the *Adrianson/Dupras* view, the probate court's subject-matter jurisdiction is determined only from a review of the legal adequacy of the allegations in the petition itself; although other errors may occur during the adjudicative stage, these errors relate only to the court's exercise of jurisdiction, not a want of jurisdiction in the first instance. Thus, pursuant to the *Adrianson/Dupras* view, errors during the actual adjudicative proceedings do not affect the probate court's subject-matter jurisdiction and, therefore, may only be raised on direct appeal; they may not be collaterally attacked. See *Adrianson, supra,* p 311.

In this case, respondent does not challenge the legal adequacy of the allegations in the petition, but, rather, only the sufficiency of the evidence in support of the allegations. Thus, under the *Adrianson/Dupras* view, respondent's claim would not be subject to collateral attack.

According to *Ferris,* however, the probate court's subject-matter jurisdiction is determined not solely from the allegations in the petition, but also from the adjudicative proceeding itself. Thus, *Ferris, supra,* p 744, states:

> If error at the adjudicative hearing results in the probate court's assuming jurisdiction when it ought not have, that error may always be attacked, even in a collateral proceeding. . . . If the error did not deprive the juvenile court of jurisdiction, it may not be collaterally attacked *since only the assumption of subject matter jurisdiction is subject to collateral attack.* [Emphasis added.]

Because it is clear that the source of the instant

conflict revolves around the issue of subject-matter jurisdiction, we believe a closer analysis of this concept is in order.

In *Pease v North American Finance Corp,* 69 Mich App 165, 168; 244 NW2d 400 (1976), this Court, quoting *Joy v Two-Bit Corp,* 287 Mich 244, 253-254; 283 NW 45 (1938), stated:

> "Jurisdiction over the subject-matter is the right of the court to exercise judicial power *over the class of cases, not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending.*" [Emphasis added.]

Also see *Campbell v St John Hosp,* 434 Mich 608, 613-614; 455 NW2d 695 (1990).

Further, in *Fox v Martin,* 287 Mich 147, 152; 283 NW 9 (1938), our Supreme Court stated:

> *"The question of jurisdiction does not depend on the truth or falsehood of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry."*
>
> *"Jurisdiction always depends on the allegations and never upon the facts.* When a party appears before a judicial tribunal and alleges that a certain right is denied him, *and the law has given the tribunal the power to enforce that right* [emphasis in the original]—his adversary being notified—it must proceed to determine the truth or falsity of his allegations. *The truth of the allegations does not constitute jurisdiction."* [Emphasis added.]

These cases are consistent with the *Adrianson/ Dupras* view that a court's subject-matter jurisdiction is determined only by reference to the allegations themselves, not the subsequent proceedings. Thus, where it is apparent from the allegations that the matter alleged is within the class of cases

in which a particular court has been empowered to act, jurisdiction is present. Any subsequent error in the proceedings is only error in the "exercise of jurisdiction," as distinguished from the want of jurisdiction in the first instance. Further clarifying this distinction is *Jackson City Bank & Trust Co v Fredrick,* 271 Mich 538, 544-546; 260 NW 908 (1935):

> When there is a want of jurisdiction over the parties, or the subject-matter, no matter what formalities may have been taken by the trial court, the action thereof is void because of its want of jurisdiction, and consequently its proceedings may be questioned collaterally as well as directly. They are of no more value than as though they did not exist. But in cases where the court has *undoubted jurisdiction of the subject matter, and of the parties,* the action of the trial court, though involving an erroneous exercise of jurisdiction, which might be taken advantage of by direct appeal, or by direct attack, yet the judgment or decree is not void though it might be set aside for the irregular or erroneous exercise of jurisdiction if appealed from. *It may not be called into question collaterally.*
>
> * * *
>
> "Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, . . . and cannot be collaterally attacked. *Error in the determination of questions of law or fact upon which the court's jurisdiction in the particular case depends, the court having general jurisdiction of the cause and the person, is error in the exercise of jurisdiction.* Jurisdiction to make a determination is not dependent upon the correctness of the determination made." [Emphasis added.]

Applying *Jackson City Bank,* this Court stated in *Memphis Community Schools v Henderson,* 152 Mich App 43, 48; 394 NW2d 12 (1986):

> Because respondent's petition for review to the circuit court alleged facts which would give the commission jurisdiction, *any error in finding jurisdiction was error in the exercise of jurisdiction.* [Emphasis added.]

Finally, in *Buczkowski v Buczkowski,* 351 Mich 216, 221; 88 NW2d 416 (1958), it was recognized that a court has jurisdiction to make an error.[1]

We conclude that the foregoing authorities clearly support the view expressed in *Adrianson* and *Dupras* that error during the adjudicative proceedings is not error affecting the court's subject-matter jurisdiction and, thus, is not subject to collateral attack.

Despite the clear weight of case law authority supporting the *Adrianson/Dupras* view, the *Ferris* Court concluded that various statutory provisions nevertheless supported its conclusion that error during the actual adjudicative proceedings also constituted jurisdictional error.

There is no question but that a probate court is a court of limited jurisdiction, possessing only those powers prescribed by the constitution or a statute. *York v Isabella Bank & Trust,* 146 Mich App 1, 6-7; 379 NW2d 448 (1985). Although *Ferris* concluded that its view was supported by the language in subsection 2(b), our reading of the statute fails to disclose any such support. The relevant statutory language reads: "the probate court shall have . . . jurisdiction in *proceedings*

---

[1] *Buczkowski* also noted the existence of a loose practice of saying that a court has no "jurisdiction" when what was really meant was that the court had no legal "right" to take the action it did. *Id.,* p 222.

*concerning* any child under 18 years of age . . . ."
(Emphasis added.) In our opinion, the use of the
language "proceedings *concerning*" supports the
generally recognized view that it is the nature of
the matter alleged that determines jurisdiction.
We are unable to find anything in the statutory
language supporting *Ferris'* more expansive view
that the conduct of the actual adjudicative pro-
ceedings is also jurisdictional.

Nor do we find persuasive *Ferris'* reliance on the
provisions of MCL 712A.18(1); MSA 27.3178(598.18)
(1), providing in part:

> If the court finds that a child concerning whom
> a petition has been filed is not within this chapter,
> the court *shall* enter an order dismissing the
> petition. [Emphasis added.]

Although this language clearly requires a court to
dismiss a petition when it finds that a child is not
subject to the provisions of the chapter, we find
nothing in the language suggesting that an errone-
ous determination is jurisdictional.

In construing jurisdictional statutes, retention of
jurisdiction is presumed, and any intent to divest a
court of jurisdiction must be clearly and unambig-
uously stated. *Campbell, supra,* p 614. Also see *Leo
v Atlas Industries, Inc,* 370 Mich 400, 402; 121
NW2d 926 (1963). While the statutory provisions
relied upon by *Ferris* clearly indicate that a pro-
bate court has jurisdiction when it is presented
with a "proceeding concerning" a matter within
the class of cases provided for in either subsection
2(b)(1) or subsection 2(b)(2), there is no statutory
language clearly and unambiguously suggesting
that the probate court thereafter may be divested
of jurisdiction because of developments during the
actual adjudicative proceedings.

Indeed, MCL 712A.2a(1); MSA 27.3178(598.2a)(1), which was not discussed in *Ferris,* provides, in relevant part:

> Except as otherwise provided in subsection (2), if the juvenile division of the probate court *has exercised jurisdiction* over a child under section 2(a) or (b) of this chapter, *jurisdiction shall continue* . . . . [Emphasis added.]

We find it noteworthy that the statute uses the phrase "exercised jurisdiction," a phrase that prior case law has repeatedly used to distinguish a situation involving a want of jurisdiction in the first instance. If the Legislature did not intend this distinction to be recognized in probate proceedings, we do not believe it would have used the language it did.

It is our belief, therefore, that the *Adrianson/ Dupras* view represents a correct understanding both of general jurisdictional law and of legislative intent. Thus, pursuant to this view, it is our belief that error during the adjudicative stage of a probate proceeding should not be subject to collateral attack, inasmuch as we do not believe that such error is jurisdictional.

We turn now, however, to our Supreme Court's decision in *Fritts v Krugh,* 354 Mich 97; 92 NW2d 604 (1958), a case also relied upon by the *Ferris* Court. In *Fritts,* a collateral attack on a termination order was permitted by way of a writ of habeas corpus. While the Court found that the initial petition sufficiently alleged jurisdictional facts, and, therefore, found that the probate court "had jurisdiction . . . for purposes of hearing the neglect complaint," *Id.,* p 111, it nevertheless concluded, in a four-to-three decision, that such jurisdiction was divested because of insufficient factual

support for the allegations in the complaint. Thus, the Court held that the probate court's order was "void for want of proof of essential jurisdictional facts of neglect." *Id.,* p 115.

The lengthy dissent in *Fritts* strongly criticized the majority's analysis as well as its "loose use of the word 'jurisdiction.' " *Id.,* p 132. The dissent's distaste for the majority's holding is reflected in the following passage:

> The sun will not set on this day before we will be forced to devise ways first to distinguish, then to repudiate, then to bury, this case as authority. No court can live with the proposition that jurisdiction to hear and decide depends upon evidence sufficient to justify the remedy prayed. [*Id.,* p 133.]

Although *Adrianson* discussed *Fritts* in its decision, it found *Fritts'* strong dissent persuasive, *Adrianson, supra,* p 309, while also noting that, after *Fritts* was decided, the Supreme Court, in *In re Mathers,* 371 Mich 516, 528-529; 124 NW2d 878 (1963), only examined the sufficiency of the petitions to determine whether the probate court had jurisdiction over a case. *Adrianson, supra,* p 311.

*Ferris,* however, concluding that the *Adrianson* Court's reading of the *Fritts* majority was overly narrow, *Ferris, supra,* p 742, relied on *Fritts* in support of its decision. In a concurring opinion, however, Judge Timms, although agreeing that *Fritts* was controlling, nevertheless expressed his belief that *Fritts* was wrongly decided, and then added:

> I can think of no other civil action in which a failure of proofs in support of a complaint will divest a court of jurisdiction when the proper parties are before the court and the subject matter

of the complaint is cognizable by that court. [*Ferris, supra,* p 746.]

We too are of the opinion that *Fritts* was wrongly decided. We believe that the decision is neither in accord with the general law of jurisdiction nor a fair reading of the applicable probate statutes. However, unlike *Adrianson,* we do not believe that *Fritts* properly may be disregarded. While the Supreme Court in *Mathers* did examine only the sufficiency of the allegations in the petitions to determine whether jurisdiction was proper, it did not specifically discuss, one way or the other, the effect of insufficient factual support for the allegations in a petition on the probate court's subject-matter jurisdiction. Thus, we are unable to say that the vitality of *Fritts* is affected by the Court's subsequent decision in *Mathers.* Nor do we believe that *Fritts* properly may be distinguished, because the case clearly holds that a probate court's subject-matter jurisdiction is dependent upon the establishment of sufficient factual support for "jurisdictional" allegations. Finally, we note that the relevant statutory provisions have remained in substantially the same form as they were at the time *Fritts* was decided. Accordingly, we agree with *Ferris* that *Fritts* continues to represent controlling precedent.[2]

Therefore, having previously decided that the trial court erred in finding that respondent's son came within the provisions of MCL 712A.2(b)(1); MSA 27.3178(598.2)(b)(1), we are required to hold, pursuant to *Fritts,* that such error constituted

[2] I acknowledge that I was a member of the panel in *Dupras,* which, although following *Adrianson,* did not specifically discuss *Fritts.* As reflected by this opinion, I still adhere to the view expressed in *Adrianson* and *Dupras,* believing it to be not only the better view, but also the correct view. Nevertheless, *Ferris* has persuaded me that *Fritts* remains controlling and that we are bound to follow it.

jurisdictional error and, therefore, can be collaterally attacked in the instant appeal. Furthermore, because *Fritts* compels us to hold that such error was jurisdictional error, we are required to find that the probate court was without jurisdiction to proceed to termination of respondent's parental rights. *In re Taurus F,* 415 Mich 512, 526; 330 NW2d 33 (1982).

The resultant effect of allowing adjudicative proceedings to be collaterally attacked long after the fact should not be underscored. As pointed out by the dissent in *Fritts,* the finality of probate court orders is severely jeopardized by such a rule. *Id.,* p 125. We are particularly troubled with the application of the holding in *Fritts* to a case such as this where an initial finding that a child comes within the applicable provisions of the probate code is permitted to be made pursuant to a plea of admission. First, because such a situation is essentially an uncontested one, the potential is greater that error may occur, not necessarily because the facts do not warrant the probate court's refrainment from exercising its jurisdiction, but because there may be felt less of an urgency to develop the facts as fully as they might otherwise be developed in a contested situation.[3] Secondly, where a party ultimately receives an unfavorable decision in a subsequent proceeding, we find it difficult to comprehend the rationale for permitting that party to attack the unfavorable decision, not on the basis of error in the proceeding that led to the decision, but on the basis that the court acted erroneously

---

[3] Indeed, from our review of the testimony at the subsequent proceedings in this case, it is apparent to us that there was much more surrounding the situation and events leading to the initiation of probate proceedings than was brought out at the September 15, 1988, hearing. Nevertheless, we must go by what was produced on the record and, as previously indicated, we conclude that the record was insufficient to support the court's finding that respondent's son came within the provisions of subsection 2(b)(1).

in an earlier proceeding where the action itself was neither contested by the party in the first instance nor otherwise challenged in the manner provided by law. In making these statements we do not mean to undermine the importance of the adjudicative stage, nor do we believe that error during the adjudicative stage is excusable. We simply believe that if error does in fact occur, such error should be raised and corrected in a proper proceeding, rather than being allowed to be attacked collaterally after all else fails.

Absent the decision in *Fritts,* we would hold, consistent with the general law of jurisdiction, that error during the adjudicative stage is not jurisdictional and, therefore, cannot be collaterally attacked. We would then proceed both to address and then to reject respondent's remaining arguments that the probate trial court's decision to terminate her parental rights was not supported by clear and convincing evidence. MCL 712A.19b(3); MSA 27.3178(598.19b)(3). The evidence showed that respondent's son was born with fetal alcohol syndrome. The evidence presented both at the subsequent review hearings and at the termination hearing also established a persistent pattern of ambivalence and indifference by respondent toward her son's needs, safety, and welfare. The testimony showed that respondent frequently missed scheduled visitations with her child and that, when she did visit, she would often arrive late or leave early. Additionally, her interaction with the child was described as poor and was characterized by rough treatment and lack of attention to the child's physical needs. Testimony also showed that respondent was resistant to rehabilitative efforts and assistance by others, having missed appointments both for psychological evaluations and for work-training programs. Indeed,

when she finally did appear for a psychological examination, she was described as being fatigued and disoriented because, as she explained, she had been in bars all weekend with her boyfriend. Diana Jensen, a family-programs counselor with a bachelor's degree in psychology, testified that respondent had made no parenting progress and that it was her belief that respondent was incapable of giving her child the emotional support he needed because of the various issues in her own life that needed to be resolved. There was also testimony that respondent was dependent on others and was more concerned with her social life and her boyfriend than with her son.

On the basis of this evidence and other evidence presented at the hearing, we would conclude that the probate court's order terminating respondent's parental rights, pursuant to MCL 712A.19b(3)(b)(ii) and (c)(i); MSA 27.3178(598.19b)(3)(b)(ii) and (c)(i), was supported by clear and convincing evidence.

However, as previously indicated, we conclude that *Fritts* compels us to hold that the error during the adjudicative stage was jurisdictional and, therefore, that all proceedings were void ab initio. Accordingly, we must reverse and vacate the order terminating respondent's parental rights. *In re Taurus F, supra.*

HOOD, J., concurred.

NEFF, P.J. *(concurring in part and dissenting in part).* I agree with the result reached by the majority, but do not believe that, on the facts of this case, we are required to or should resolve the conflict between the *Adrianson/Dupras (In re Dupras,* 140 Mich App 171; 363 NW2d 26 [1984]; *In re Adrianson,* 105 Mich App 300; 306 NW2d 487 [1981])* and *Ferris (In re Ferris,* 151 Mich App 736;

391 NW2d 468 [1986]) lines of reasoning on the
issue whether errors during the adjudicative stage
of a probate court proceeding to terminate paren-
tal rights may be collaterally attacked. Moreover,
if I were compelled to address the issue, I would
adopt the *Ferris* line of reasoning and reach the
opposite result.