*In re* HATCHER

(DEPARTMENT OF SOCIAL SERVICES v HATCHER)

Docket No. 94520. Argued March 3, 1993 (Calendar No. 11). Decided August 31, 1993.

The Department of Social Services petitioned the Muskegon County Probate Court for temporary wardship of James Hatcher, Jr., a minor, alleging that the child's mother, Revender Harris, was chronically mentally ill, preventing her from properly caring for the child, that the child's father, James Hatcher, Sr., had drug and alcohol abuse problems that rendered the home unfit, and that the father left the child alone with the mother even though he knew she could not adequately care for him. At a preliminary hearing, a referee authorized the filing of the petition, finding probable cause that the allegations were true, and approved temporary placement with the child's paternal grandmother. During the initial trial, both parents stipulated that the infant should become a ward of the court and that placement should change from the paternal to the maternal grandmother. Following trial, review hearings were held; no challenge was made with regard to the jurisdiction of the court. Thereafter, the court, Neil G. Mullally, J., terminated the parental rights of the parents. The Court of Appeals, D. E. HOLBROOK, JR., and BRENNAN and GRIFFIN, JJ., reversed in an unpublished opinion per curiam, holding that the termination proceedings were void ab initio because the probate court never assumed valid subject matter jurisdiction over the child (Docket No. 144698). The guardian ad litem appeals.

In a unanimous opinion by Justice MALLETT, the Supreme Court *held*:

The probate court properly assumed jurisdiction over the child. The parents' collateral attack on the court's subject matter jurisdiction was invalid.

1. The probate court's jurisdiction over children derives from the constitution and from statute; it may not be enlarged or

REFERENCES

Am Jur 2d, Courts §§ 32, 104; Judgments § 47.
See ALR Index under Jurisdiction; Probate Courts and Proceedings.

diminished by the courts. Nor may subject matter jurisdiction be conferred on the court by the consent of parties. Where a probate court has established temporary jurisdiction over a child, an erroneous exercise of the jurisdiction may be challenged during mandatory review hearings.

2. A probate court's subject matter jurisdiction is established when an action is of a class the court is authorized to adjudicate and the complaint is not clearly frivolous. The valid exercise of statutory jurisdiction is established by the contents of the petition after the probate judge or referee has found probable cause to believe that the allegations in the petition are true. A party may not challenge the court's decision years later by collateral attack where a direct appeal was available. In this case, because the referee found probable cause, it was proper for the court to invoke its jurisdiction. The respondent did not dispute the petition's contents and agreed with the out-of-home placement, precluding collateral attack.

Reversed and remanded.

354 Mich 97; 92 NW2d 604 (1959) overruled.

PARENT AND CHILD — PROBATE COURTS — SUBJECT MATTER JURIS-DICTION — COLLATERAL REVIEW.

A probate court's subject matter jurisdiction is established when an action is of a class the court is authorized to adjudicate and the complaint is not clearly frivolous; the valid exercise of statutory jurisdiction is established by the contents of the petition after the probate judge or referee has found probable cause to believe that the allegations in the petition are true; a party may not challenge the court's decision years later by collateral attack where a direct appeal was available.

*Balgooyen Law Offices, P.C.* (by *Gerald W. Gibbs*), guardian ad litem, for the petitioner.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Kevin A. Lynch,* Assistant Prosecuting Attorney, for the Department of Social Services.

*Potuznik, Carrozza, Wilson, Hermanson & Wistrom, P.C.* (by *Kevin J. Wistrom*), for the respondent.

MALLETT, J. The dispositive issue in this case is

whether the probate court's assumption of subject matter jurisdiction over a minor child may be challenged by the child's parent after a termination decision and, if so, whether the entire termination proceedings should be declared void ab initio. In the instant case, we find that the probate court properly assumed jurisdiction and that the parents' collateral attack on the court's subject matter jurisdiction was invalid. Therefore, we reverse the Court of Appeals decision and remand this case for consideration of the other issues that were not addressed.

## I. FACTS

James Hatcher, Jr., was born on November 7, 1988. On the day of the child's birth, the police arrested the father, James Hatcher, Sr., while he was attempting to visit the newborn in the hospital, for drunk and disorderly conduct and for possession of marijuana. Revender Harris, the child's mother, suffered from a mental illness that made her unable to care for the infant.

The Department of Social Services was aware of the instability of the infant's family. Subsequently, the parents voluntarily placed the child with his paternal grandmother until June of 1989. At that time, doctors had medicated Revender Harris and had sufficiently stabilized her mental condition so that she could care for her child. By August, however, the mother stopped taking her medications and failed to keep her appointments at Muskegon Community Mental Health, and her mental condition gradually began to deteriorate. When her condition became critical, shortly after the infant's first birthday, the DSS petitioned for temporary wardship of the child.

The petition alleged that Revender Harris'

chronic mental illness prevented her from properly caring for the child and that the father's drug and alcohol abuse problems rendered the child's home unfit. The petition also alleged that the father left the child alone with the mother even though he knew that she could not adequately care for the infant.[1]

On November 15, 1989, the Muskegon Probate Court held a preliminary hearing on the petition. Neither parent attended the hearing, although both had received notice of it. During the hearing, the referee read the petition into the record, and Rikki Harris, a DSS social worker, testified regarding the facts alleged in the petition. Gerald Gibbs, counsel for the child, testified that neither parent appeared fit to rear the child and recommended continued placement with the paternal grandmother. Considering the verified petition and the

---

[1] The petition, in part, read as follows:

> Citations and allegations: Said child's home by reason of neglect, is an unfit place for said child to live in, in that the said child's mother, Revender Harris, is mentally ill and not in touch with reality unless consistently medicated. She has not taken her prescribed medications since August 1989, and, on 11-9-89, refused an injection prescribed by her psychiatrist. Due to her current mental state, she is unable to care for said child.
>
> Further, Ms. Harris has a history of involuntary hospitalizations for mental illness. Two older children were placed and continue to reside with relatives due to Ms. Harris' mental instability. Protective Services involvement from November 1988, through June 1989, resulted in temporary placement of said child with a relative until Ms. Harris' condition was stabilized.
>
> Said child's father, James Hatcher Sr., has a history of substance abuse and drunk and disorderly behavior. In February 1989 he was convicted of possession of marijuana. Further, on 11-9-89 Mr. Hatcher was told by Protective Services and Dr. Ragu, M.D., that Revender Harris should not be left at home alone with their son. Despite that warning, Mr. Hatcher thereafter on 11-14-89 left Ms. Harris home alone with the child for at least one hour. Upon return to the residence, he had alcohol on his breath.

testimony, the referee authorized the filing of the petition with a finding of probable cause that the allegations were true. He also found that reasonable efforts had been made to avoid placement and that releasing the child to the parents would present a substantial possibility of harm to the infant. Finally, the referee approved continued temporary placement with the paternal grandmother.

The probate court held the initial trial on January 12, 1990. At this time, both the mother and the father stipulated that the infant should become a temporary ward of the court and that placement should change from the paternal to the maternal grandmother. The court proceeded by the parties' stipulation and did not take testimony from either parent, each of whom was represented by counsel. After the trial, review hearings were held on April 17, 1990,[2] July 10, 1990,[3] and October 30, 1990.[4] At no point during these pro-

---

[2] At this hearing, the DSS recommended that the infant remain a temporary ward of the court and continue his placement with his maternal grandmother. The DSS proposed a parent-agency agreement as the basis upon which the court would review the child's wardship in future proceedings. Under this tentative plan, both parents would seek counseling regarding child rearing and the father would seek counseling for substance abuse. The DSS recommended that if the parents complied with the agreement, then the child could be reunited with his parents. The court agreed with these recommendations and allowed the father to arrange visits with his son through the agency.

[3] On this date, the court heard testimony from DSS caseworkers who indicated that the father had pleaded guilty of attempted assault with a dangerous weapon, but had been released on bond. The testimony revealed that although the father did not want to terminate his parental rights to the child, he refused to comply with the proposed parent-agency agreement because he denied any alcohol or substance abuse. The caseworker testified, "Mr. Hatcher basically rejected being involved in any services, and stated that he did not want to coöperate with the Department of Social Services, and stated I'll—I'll just have another kid and leave the country when told that this could possibly mean termination of his parental rights."

[4] At this hearing, the court determined that the mother's mental

ceedings did Hatcher challenge the jurisdiction of the court.

On January 28, 1991, the court conducted a permanency planning hearing.[5] The court received overwhelming evidence of the mother's mental illness and her incapacity to care for the infant. Testimony regarding the father revealed that Maurdell Harris, Revender's mother, had custody of Revender's and James' two older daughters, Angel and Shamier. Linda Harris, Revender's sister, and Maurdell testified that they had repeatedly received lewd telephone calls from the father in which he indicated that he wanted to "swap" custody of his infant son for his older daughter, Shamier. The father indicated he wanted custody of his nine-year-old daughter so that he could engage in sexual relations with her.

Testimony was also offered that the father admitted to using cocaine. A substance abuse therapist who examined the father testified that he was coöperative when questioned concerning his use of drugs and alcohol. The therapist noted, however, that he skirted a number of issues regarding his substance abuse assessment. The therapist opined that the father minimized his use of alcohol and

illness made it impossible for her to comply with the parent-agency plan and that the father refused to coöperate with DSS caseworkers. The court noted that visitation had occurred with the mother, but not with the father, and that DSS caseworkers had made reasonable efforts to assist the parents. The court concluded, "there has not been any progress since the last review to rectify any conditions that caused removal." The court continued temporary wardship and relative care.

[5] A permanency planning hearing is required after a child has spent twelve months in foster care and parental rights to the child have not been terminated. The hearing is based on the premise that a failure to quickly decide on a long-term care plan for the child could be detrimental to the minor. At the hearing, the court may decide that (1) the child should return home, (2) the child should continue in foster care for a limited specified time or on a long-term basis, or (3) the agency has demonstrated that termination of parental rights may be in the child's best interests. MCL 712A.19a; MSA 27.3178(598.19a), MCR 5.973(C)(1).

recommended a four- to six-month out-patient therapy program. Although the father attended a few of these sessions, the therapist stated that he did not fully acknowledge the severity of his drug abuse problem.

Further testimony revealed that the father had done little to establish a parent-child relationship with James Hatcher, Jr. Although the case began in late 1989, the father did not begin coöperating with the DSS until January of 1991. A DSS worker testified that the father rarely visited the child. Often, visits were scheduled but later canceled. Finally, caseworkers testified that although Hatcher was aware of the mother's mental illness and inability to care for the infant, he nevertheless left the child alone with her.

In its ruling, the probate court terminated the parental rights of the mother and the father. Although the mother did not appeal, the father's appeal raised three issues. The Court of Appeals addressed one of these issues and reversed in an unpublished one-page per curiam opinion. The panel held that the termination proceedings were void ab initio, that the probate court never assumed valid subject matter jurisdiction over the child. Although the parties attempted to establish jurisdiction by stipulation, neither parent stipulated to facts that supported a statutory basis for jurisdiction. The panel indicated that it was bound by precedent to hold that the failure to establish a sufficient factual basis for probate subject matter jurisdiction renders subsequent proceedings void ab initio. See *In re Waite,* 188 Mich App 189, 208; 468 NW2d 912 (1991); *In re Nelson,* 190 Mich App 237, 241-242; 475 NW2d 448 (1991). The Court did not address respondent's remaining two issues. On August 7, 1992, the guardian ad litem for the

child filed a delayed application for leave to appeal with this Court.

II

Michigan's Constitution vests probate courts with original subject matter jurisdiction over juvenile dependents, except as otherwise provided by law. Const 1963, art 6, § 15. The courts, by rule or otherwise, may not enlarge or diminish this jurisdiction. *In re Kasuba Estate,* 401 Mich 560, 566; 258 NW2d 731 (1977). Moreover, subject matter jurisdiction cannot be conferred on the court by the consent of parties. *Lehman v Lehman,* 312 Mich 102, 106; 19 NW2d 502 (1945). The court must make its own determination regarding the existence of a statutory basis for jurisdiction.

MCL 712A.2(b)(2); MSA 27.3178(598.2)(b)(2) provides the probate court with "[j]urisdiction in proceedings concerning any child under 18 years of age found within the county . . . [w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, or other custodian, is an unfit place for the child to live in." Within the context of subsection (b)(2), the term "jurisdiction" refers to the probate court's authority to hear and decide a case on the basis of a finding of fact that the child belongs to the class of children over whom the court has the power to act. In short, a juvenile court must determine that the facts of a particular case place a child within the specific provisions of subsection (b)(2).

The analysis of whether a child falls within the juvenile court's jurisdiction begins with the court's preliminary proceeding. A petition forms the basis of any preliminary action by the court. It is the initial request for judicial action against a juvenile

or for the protection of the child.[6] As defined in the Michigan Court Rules, a petition is a verified complaint or other written accusation. It is to be filed with the court and to set forth charges against a parent, custodian, or child with ample clarity and specificity to reasonably appraise them of the matters under consideration before the court.[7] If the petition does not request placement[8] of the child, the court may conduct a preliminary inquiry, as opposed to the preliminary hearing. MCR 5.962(A). The inquiry consists of an informal review of the petition by the juvenile court to determine an appropriate course of action. MCR 5.903(A)(17). A preliminary hearing is the formal review of the petition when the judge or referee considers authorizing the petition and placing the case on the formal calendar.

At the preliminary hearing, probate courts re-

---

[6] MCR 5.931(A) (delinquency proceeding); MCR 5.961(A) (protective proceeding). See also MCL 712A.2, 712A.11; MSA 27.3178(598.2), 27.3178(598.11).

[7] MCR 5.903(A)(14); see also MCL 712A.11(4); MSA 27.3178(598.11)(4) ("The petition shall set forth plainly the facts that bring the child within this chapter"). Provisions within the statute set forth the standards and procedures for drafting and filing a petition.

Legal commentators have noted that the petition has two essential functions:

First, it is a court document which should set forth the alleged basis of the court's jurisdiction over a particular child. The petition names the child and the respondents and frames the issues to be addressed by the court. The court may not inquire into matters not alleged in the petition. . . . The second principal function of the petition is to communicate to the respondents a notice of the charges against them so that they might evaluate their situation and prepare a response. The description of the parents' acts of commission or omission should be put in terms specific enough to allow a defense to be prepared. [Duquette, Michigan Child Welfare Law, ch 5, pp 47-48.]

[8] "Placement" is defined as "court-approved removal of a child from the parental home and placement in foster care, in a shelter home, in a hospital, or with a private treatment agency." MCR 5.903(C)(5).

quire a finding of probable cause to substantiate that the facts alleged in the petition are true and that if proven at trial would fall under subsection (b)(2).[9] When a court authorizes a petition for jurisdiction during the preliminary hearing,[10] generally, it will issue a preliminary order that specifies a plan for temporary placement. The adjudicative phase follows the preliminary hearing. At this stage, the court weighs the evidence to determine whether the child is neglected within the meaning of subsection (b) and then orders the disposition or

[9] MCR 5.965(B) provides, in part, that during a preliminary hearing:

(3) The court shall read the allegations in the petition in open court, unless waived.

(4) The court shall determine if the petition should be dismissed or the matter referred to alternate services. If so, release the child and, if not, continue with the hearing.

* * *

(6) The court shall advise the respondent of the right to trial on the allegations in the petition and that the trial may be before a referee unless the required demand for a judge or jury is filed pursuant to MCR 5.912 or 5.913.

* * *

(8) The court shall allow the respondent an opportunity to deny or admit the allegations and make a statement of explanation.

(9) Unless the preliminary hearing is adjourned, the court shall decide whether to authorize the filing of the petition. *The court may authorize the filing of the petition upon a showing of probable cause, unless waived, that one or more of the allegations in the petition are true and fall within MCL 712A.2(b); MSA 27.3178(598.2)(b). The court shall indicate whether temporary or permanent custody is sought, and must direct that the respondent and the attorney for the child receive a copy of the petition authorized to be filed.* [Emphasis added.]

Although there is no consensus regarding the exact term to describe the court's jurisdiction from one procedural stage to another, one legal commentator has referred to the court's authority after the petition's authorization as "preliminary jurisdiction," i.e., when a child is placed in custody after a preliminary hearing and before a formal adjudication. See Duquette, n 7 *supra,* ch 9, p 83.

[10] According to MCR 5.903(A)(5), "[a]n authorized petition is deemed 'filed' when it is delivered to, and accepted by, the register or clerk of the court."

placement that comports with the child's best interests.[11]

When the probate court has established temporary jurisdiction over a child, an erroneous exercise of that jurisdiction may be challenged at any of the mandatory review hearings. MCL 712A.19; MSA 27.3178(598.19). A parent is also entitled to request a rehearing not later than twenty days after an order terminating parental rights and removing the child from parental custody, or at any time the court has jurisdiction over the child. MCL 712A.21; MSA 27.3178(598.21). A probate court can also enter an order for supplemental disposition as long as the child remains under the court's jurisdiction. *Id.* These statutory safeguards ensure the parent, guardian, or custodian time to review and even challenge a court's exercise of its jurisdiction.

III

The respondent-father has attempted to restore his parental rights, which were terminated on the basis of the findings at the permanent wardship trial. The respondent brings this appeal from the termination order, but he collaterally attacks the subject matter jurisdiction of the earlier proceeding at which the Muskegon Probate Court made his child its temporary ward. The father failed to challenge the temporary wardship decision in the initial proceedings. Consequently, the first issue we must address is what invoked the probate court's subject matter jurisdiction.

The father insists that the probate court did not establish any facts at the hearing to justify the temporary wardship. He argues that a party's consent to the creation of a temporary wardship is

---

[11] MCR 5.972, 5.973.

insufficient to establish the court's subject matter jurisdiction. *In re Youmans,* 156 Mich App 679; 401 NW2d 905 (1986). Therefore, according to respondent, a court must independently determine, through testimony from the parent, whether the allegations in a petition are true and whether these allegations are sufficient to permit a court to assume subject matter jurisdiction. *In re Arntz,* 125 Mich App 634; 336 NW2d 848 (1983), rev'd on other grounds 418 Mich 941; 344 NW2d 1 (1984). The respondent contends that without an independent judicial determination, the probate court lacked subject matter jurisdiction, and, thus, the later termination proceedings were void ab initio. *In re Youmans, supra.*

We hold, however, that the probate court's subject matter jurisdiction is established when the action is of a class that the court is authorized to adjudicate, and the claim stated in the complaint is not clearly frivolous. The valid exercise of the probate court's statutory jurisdiction is established by the contents of the petition after the probate judge or referee has found probable cause to believe that the allegations contained within the petitions are true. Here, the petition alleged neglect, criminality, drunkenness, and a failure to maintain proper custody and guardianship of the infant. When the referee considered the facts alleged in the petition and the testimony presented, he found probable cause that the allegations were true. Consequently, it was proper for the court to invoke its jurisdiction, assuming the court also had jurisdiction of the parties, a fact not here in dispute. Procedural errors that may have occurred did not affect the probate court's subject matter jurisdiction.

Although neither the mother nor the father stipulated facts that supported the court's jurisdic-

tion, this jurisdiction is initially established by pleadings, such as the petition, rather than by later trial proceedings that may establish by a preponderance of the evidence that a child is within the continued exercise of the probate court's subject matter jurisdiction. *In re Mathers,* 371 Mich 516, 528-529; 124 NW2d 878 (1963). The father's arguments address the procedure by which the probate court proceeded after it had established subject matter jurisdiction on the basis of a validly filed petition. The respondent could have appealed the court's exercise of its statutory jurisdiction by challenging the sufficiency of the petition and the temporary wardship. MCR 5.993. See also MCL 600.861 and 600.863; MSA 27A.861 and 27A.863. Alternatively, he could have pursued a number of statutory proceedings designed to redress an erroneous exercise of jurisdiction.[12] He chose not to do so, however, and instead agreed to the placement of the child with the maternal grandmother.

It is beyond question that a party may attack subject matter jurisdiction at any time. *Shane v Hackney,* 341 Mich 91; 67 NW2d 256 (1954). In fact, a proven lack of subject matter jurisdiction renders a judgment void. *In re Hague,* 412 Mich 532; 315 NW2d 524 (1982). Here, however, the respondent confuses the distinction between whether the court has subject matter jurisdiction and whether the court properly exercised its discretion in applying that jurisdiction. As explained in *Jackson City Bank & Trust Co v Fredrick,* 271 Mich 538, 545-546; 260 NW 908 (1935),

"Want of jurisdiction must be distinguished from error in the exercise of jurisdiction. Where

---

[12] See MCL 712A.19; MSA 27.3178(598.19) (review hearing); MCL 712A.21; MSA 27.3178(598.21) (rehearing, supplemental disposition).

jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked. Error in the determination of questions of law or fact upon which the court's jurisdiction in the particular case depends, the court having general jurisdiction of the cause and the person, is error in the exercise of jurisdiction. Jurisdiction to make a determination is. not dependent upon the correctness of the determination made." 33 CJ, pp 1078, 1079.

The reasoning of *Jackson City Bank* has been followed by a number of Michigan courts since its decision in 1935. *Bowie v Arder,* 441 Mich 23; 490 NW2d 568 (1992); *Buczkowski v Buczkowski,* 351 Mich 216, 222; 88 NW2d 416 (1958); *Harmsen v Fizzell,* 354 Mich 60, 63; 92 NW2d 631 (1958); *Banner v Banner,* 45 Mich App 148, 152-155; 206 NW2d 234 (1973).[13]

Generally, lack of subject matter jurisdiction can be collaterally attacked and the exercise of that jurisdiction can be challenged only on direct appeal. *Life Ins Co of Detroit v Burton,* 306 Mich 81; 10 NW2d 315 (1943); *Edwards v Meinberg,* 334 Mich 355; 54 NW2d 684 (1952).

Where the probate court erroneously exercises its jurisdiction, the error is analogous to a mistake in an information or in binding over a criminal defendant for trial. Such an error can, of course, be challenged in a direct appeal. It cannot, however, be challenged years later in a collateral

---

[13] See also *Fox v Martin,* 287 Mich 147, 152; 283 NW 9 (1938) ("[j]urisdiction always depends on the allegations and never upon the facts. . . . The truth of the allegations does not constitute jurisdiction").

attack. If such a delayed attack were always possible, decisions of the probate court would forever remain open to attack, and no finality would be possible. [*In re Adrianson,* 105 Mich App 300, 309; 306 NW2d 487 (1981).]

One exception to this general rule has been *Fritts v Krugh,* 354 Mich 97; 92 NW2d 604 (1958). Although the instant Court of Appeals decision relies on *Fritts* to substantiate its holding, *Fritts* is distinguishable. In *Fritts,* the Court held that a judgment of permanent wardship could be collaterally attacked on the basis of a lack of subject matter jurisdiction if a legally sufficient petition created a permanent wardship with no evidentiary basis to support the decision. *Fritts* involved a father who abandoned his wife and two children. Subsequently, the children's mother decided that she could not care for them and requested the probate court to begin adoption proceedings. Between the filing of the petition for adoption and the hearing, the parents reconciled. They asked the court to return the children and insisted that they never agreed to the court's exercise of subject matter jurisdiction.

In its reasoning, the *Fritts* Court attempted to correct what it perceived to be a gross lack of procedural due process. The mother attempted to withdraw the adoption petition and both parents disputed the finding of neglect, but were precluded from presenting evidence supporting their position. To remedy the situation, the Court permitted collateral attack on the exercise of jurisdiction. It held that the probate court lacked subject matter jurisdiction until sufficient facts had been established by competent evidence to support the petition. It blurred the distinction between the existence of subject matter jurisdiction and the exer-

cise of that jurisdiction to justify the collateral attack. It held that the probate court abused its power and that the lack of a proper direct appeal was a mere technicality.

There are factual distinctions between *Fritts* and the instant case. First, in *Fritts,* the parents disputed the allegations of neglect. The complexity of the issues confronting the *Fritts* Court led the majority to attach an addendum to its opinion that reëmphasized a number of key points. It stressed that on the day of the probate court hearing,

> [t]here was a sworn complaint. Its allegations of neglect and dependency were disputed by the parents who, reunited, were present in the courtroom to contest it. . . . Nothing resembling legal evidence was offered to establish abuse of or neglect of the children. . . . We reiterate that where the fundamental facts of neglect are in dispute, our Constitution and statute require some legal evidence to support the court's assertion of jurisdiction. [*Id.* at 118.]

In the instant case, the respondent did not dispute the petition's contents and in fact agreed with the out-of-home placement.

Second, in drafting its holding, the majority in *Fritts* apparently neglected its own reasoning and required evidentiary facts to support an exercise of subject matter jurisdiction and not the existence of that jurisdiction. The confusion in *Fritts* is evidenced by the language of the Court, which initially held that the probate court had subject matter jurisdiction. In the words of the Court,

> We believe the probate court had jurisdiction of the persons and the subject matter for purposes of hearing the neglect complaint. The children resided in the county concerned. The essential par-

ties had notice. The mother's petition in the instant case served to allege neglect and dependency of the 2 children. The essential facts alleged were the father's abandonment of her and them, the break-up of the family and the absence of any support for the children. [*Id.* at 111.]

Yet, despite this initial finding of subject matter jurisdiction, the majority opined that the probate judge had insufficient evidence of neglect to enter an order of permanent custody and therefore held that "the orders entered by the probate judge taking permanent custody of these children were void for want of proof of essential jurisdictional facts of neglect." *Id.* at 115. This proposition runs counter to the weight of legal reasoning regarding subject matter jurisdiction.

A dissenting opinion in *Fritts* severely criticized the majority's confused holding, stressing that

when all is said and done . . . the decision of the probate judge upon the issue of neglect remains a matter to be corrected if in error, but not of *jurisdiction*. If he is wrong, if he makes a mistake, indeed, if he blunders, it is only that and nothing . more. If he has jurisdiction of the parties and of the subject matter he does not lose it by making a mistake, for he has jurisdiction to make mistakes.

\* \* \*

"By way of further clarification of the meaning of the act we comment upon an argument of the appellant: It is said in the appellant's brief: 'Jurisdiction of the juvenile court under the act . . . is dependent upon the evidence and in this case the evidence shows no such lack of parental care and support as would give the juvenile court jurisdiction to make appellant a ward of the court.' And throughout the oral argument of the appellant it was insisted that the juvenile court was without 'jurisdiction' to make the order appealed from.

"While it is sometimes loosely said that a court

has no 'jurisdiction' to make an order not supported by the evidence necessary to prove the cause of action set forth in the complaint which invokes the action of the court, it is important to point out, for the sake of clarity in respect of the power of the juvenile court, that in the proper sense of the word jurisdiction a court has jurisdiction, in the sense that its erroneous action is voidable only and not void, when the parties are properly before it, the proceeding is of a kind or class which the court is authorized to adjudicate, and the claim set forth in the complaint is not obviously frivolous. . . . In this proper sense of the word jurisdiction the juvenile court in the instant case had jurisdiction to make the order appealed from. The parties were before it, the case described in the petition was within the class of cases which the act gives the court power to deal with—to-wit, a case involving a question of adequate parental care of a person under the age of 18—and the petition on its face stated a cause of action. That the evidence failed to support the petition did not affect the jurisdiction of the court, in the proper sense of the term, to hear the cause and to make the order. But it did, as we have pointed out above, make the action of the court erroneous and subject to reversal on appeal."

\* \* \*

A court, having jurisdiction, does not lose it by erroneously charging, by erroneously directing a verdict, or as here by (allegedly) erroneously entering an order respecting custody.

\* \* \*

The sun will not set on this day before we will be forced to devise ways first to distinguish, then to repudiate, then to bury, this case as authority. No court can live with the proposition that jurisdiction to hear and decide depends upon evidence sufficient to justify the remedy prayed, for we do not reach the question of remedy in the matter before us until we have crossed the bridge of jurisdiction. [*Id.* at 129-133. Emphasis in original.]

Despite the factual similarities between *Fritts* and the instant case, the faulty reasoning advanced in *Fritts* is directly at odds with that of *Jackson City Bank & Trust* and its progeny.

Therefore, we overrule *Fritts,* and rule that a court's subject matter jurisdiction is established when the proceeding is of a class the court is authorized to adjudicate and the claim stated in the complaint is not clearly frivolous. The probate court's valid exercise of its jurisdiction is determined from the petition after the probate judge or referee has found probable cause to believe that the allegations contained within the petition are true. Our ruling today severs a party's ability to challenge a probate court decision years later in a collateral attack where a direct appeal was available. It should provide repose to adoptive parents and others who rely upon the finality of probate court decisions. Because the Court of Appeals did not act on the two remaining issues, we remand this case to that Court to address those issues.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, RILEY, and GRIFFIN, JJ., concurred with MALLETT, J.