[Cite as *State v. Eads*, 197 Ohio App.3d 493, 2011-Ohio-6307.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

THE STATE OF OHIO,                    :

    Appellee,                         :          C.A. CASE NO.    24696

v.                                    :          T.C. NO.    10CR4016

EADS,                                 :          (Criminal appeal from
                                                 Common Pleas Court)

    Appellant.                        :

                                      :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___9th___ day of ____December____, 2011.

. . . . . . . . . .

Mathias H. Heck, Montgomery County Prosecuting Attorney, and Johnna M. Shia, Assistant Prosecuting Attorney, for appellee.

D.K. Rudy Wehner, Montgomery County Public Defender, and Tina M. McFall, Assistant Public Defender, for appellant.

. . . . . . . . . .

FROELICH, Judge.

{¶ 1}   Justin T. Eads was convicted after a bench trial in the Montgomery County Court of Common Pleas of failure to verify his residence, as required by R.C. 2950.06, and failure to notify the sheriff of his change of address, in violation of R.C. 2950.05.   Because the underlying sex offenses were two counts of rape, both offenses under R.C. Chapter 2950 were first-degree felonies under the current

version of R.C. 2950.99.

{¶ 2} After the trial court found him guilty, Eads moved for the court to reinstate community-control sanctions. Eads argued that R.C. 2950.99 does not require a mandatory prison term for first-time convictions for failure to notify and failure to verify, even if they are felonies of the first degree. The trial court overruled Eads's motion and sentenced him to mandatory terms of three years in prison on each count, to be served concurrently. The court further ordered, however, that Eads's sentence be stayed and that he be released on bond pending appeal.

{¶ 3} Eads appeals from his conviction and sentence, raising two assignments of error.

I

{¶ 4} Eads's first assignment of error states:

{¶ 5} "It was plain error when the trial court found the defendant guilty when he had no duty to register and no duty to notify because current R.C. 2950 is unconstitutional as applied to him pursuant to *State v. Williams.*"

{¶ 6} In his first assignment of error, Eads claims that his classification as a Tier III sex offender under the current version of R.C. Chapter 2950 (S.B. 10) is unconstitutional and, as a result, he could not be found guilty of failing to register and to notify under that statute.

{¶ 7} The original version of Ohio's sex offender classification and registration law was enacted in 1963. See former R.C. Chapter 2950, 130 Ohio Laws 669. In 1996, the Ohio General Assembly enacted Ohio's version of "Megan's Law," which "repealed prior versions of R.C. Chapter 2950 and created Ohio's first

comprehensive registration and classification system for sex offenders." *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, ¶ 7, citing *State v. Cook* (1998), 83 Ohio St.3d 404, 407. Under Ohio's Megan's Law, judges classified sex offenders, after a hearing, as either a sexually oriented offender, habitual sex offender, or sexual predator, based on the judge's consideration of various factors. Sex offenders were subject to registration, classification, and/or community-notification requirements in accordance with their specific classification.

{¶ 8}  In 2006, the United States Congress passed the Adam Walsh Child Protection and Safety Act, which divided sex offenders into three tiers based solely upon the offense committed. *Bodyke* at ¶ 18. Later that same year, while Megan's Law was still in effect in Ohio, Eads, then a juvenile, committed acts of rape. In 2007, the Ohio General Assembly enacted 2007 Am.Sub.S.B. No. 10, which replaced Megan's Law with Ohio's version of the Adam Walsh Act ("S.B. 10"), effective January 1, 2008.  *Bodyke* at ¶ 20; current R.C. Chapter 2950.

{¶ 9}  In 2008, Eads was adjudicated delinquent in juvenile court for two counts of rape, based on his 2006 conduct.  The juvenile court committed Eads to the Department of Youth Services and notified him that he would be required to register as a Tier III sex offender, but was not designated a public-registry-qualified juvenile-offender registrant and was not subject to community-notification provisions. We find no indication that Eads appealed from the juvenile court's judgment.

{¶ 10} Eads registered with the sheriff's office on 11 occasions, which included four notifications to the sheriff of a change of address. However, in November 2010, Eads failed to timely verify his address (although he notified the sheriff's office by

telephone that he was in Kentucky), and he was subsequently located in Berea, Kentucky.

{¶ 11} In January 2011, Eads was indicted for failing to verify his residence and failing to notify the sheriff of his change of address. After a bench trial, the trial court convicted Eads of both charges. In May 2011, the trial court sentenced him to three years on each count, and this appeal followed.

{¶ 12} In July 2011, the Supreme Court of Ohio rendered its decision in *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374. In that case, Williams was indicted in 2007 for unlawful sexual contact with a minor; Williams pled guilty to the charge. At his plea hearing, Williams was informed that he would not be subject to reporting requirements. Williams subsequently requested that he be sentenced under Megan's Law, rather than S.B. 10, which was in effect at the time of Williams's sentencing. The court applied S.B. 10 and informed Williams that he would be designated a Tier II sex offender.   Williams appealed, arguing that S.B. 10 could not constitutionally be applied retroactively to a defendant whose offense occurred prior to the effective date of that statute.

{¶ 13} The Supreme Court of Ohio agreed with Williams. The court initially found that the Ohio legislature had expressly made S.B. 10 retroactive. It further concluded: "When we consider all the changes enacted by S.B. 10 in aggregate, we conclude that imposing the current registration requirements on a sex offender whose crime was committed prior to the enactment of S.B. 10 is punitive. Accordingly, we conclude that S.B. 10, as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits

the General Assembly from passing retroactive laws." *Williams* at ¶ 21. The court thus held: "We conclude that S.B. 10, as applied to Williams *and any other sex offender who committed an offense prior to the enactment of S.B. 10*, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from enacting retroactive laws." (Emphasis added.) Id. at ¶ 22.

{¶ 14} The state asserts that res judicata bars Eads from reaping the benefit of *Williams*, because Eads failed to challenge his classification as a Tier III sex offender through a direct appeal from his 2008 juvenile court adjudication. The state argues that Eads cannot collaterally challenge his 2008 classification and that his argument is barred by res judicata.

{¶ 15} In general, "[a] new judicial ruling may be applied only to cases that are pending on the announcement date. *State v. Evans* (1972), 32 Ohio St.2d 185, 186, 61 O.O.2d 422, 291 N.E.2d 466. The new judicial ruling may not be applied retroactively to a conviction that has become final, i.e., where the accused has exhausted all of his appellate remedies. Id.; *State v. Lynn* (1966), 5 Ohio St.2d 106, 108, 34 O.O.2d 226, 214 N.E.2d 226." *Ali v. State*, 104 Ohio St.3d 328, 2004-Ohio-6592, ¶ 6.

{¶ 16} In accordance with this general rule, the Ohio Supreme Court has consistently refused to apply new judicial pronouncements retroactively to convictions that had become final. See, e.g., *Ali* (*State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, "should not be retroactively applied to defendants whose convictions had become final"); *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, ¶ 3 ("Our holding in *Colon I* is only prospective in nature, in accordance with our

general policy that newly declared constitutional rules in criminal cases are applied prospectively, not retrospectively"); *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856 (applying its ruling to the cases before it and "those pending on direct review").

{¶ 17} We do not find that the general rule applies in this instance. Section 28, Article II of the Ohio Constitution provides: "The general assembly shall have no power to pass retroactive laws * * *." The Retroactivity Clause "nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].' " (Bracketed material sic.) *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 352-353, quoting *Miller v. Hixson* (1901), 64 Ohio St. 39, 51. "Any law 'passed' in violation of that section is therefore void. Further, because such a law purports to apply retroactively, a holding that the law violates Section 28, Article II likewise applies retroactively to any person to whom the law was retroactively applied." *State v. Pritchett*, 2d Dist. No. 24183, 2011-Ohio-5978, ¶ 26.

{¶ 18} In *Williams*, the Supreme Court concluded that S.B. 10 retroactively created new burdens, duties, and obligations on persons (such as Eads) who committed sex offenses prior to the effective date of that statute. *Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, at ¶ 20. Accordingly, the retroactive application of S.B. 10 to those persons is a nullity, and Eads's classification as a Tier III sex offender is void.

{¶ 19} We further note that, with respect to S.B.10, the Ohio Supreme Court has applied its holdings broadly. In *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, the Supreme Court concluded that "R.C. 2950.031 and 2950.032,

which require the attorney general to reclassify sex offenders who have already been classified by court order under former law, impermissibly instruct the executive branch to review past decisions of the judicial branch and thereby violate the separation-of-powers doctrine. In addition, R.C. 2950.031 and 2950.032 violate the separation-of-powers doctrine by requiring the opening of final judgments." The court severed the reclassification provisions from S.B. 10. The court thus held: "We therefore hold that R.C. 2950.031 and 2950.032 are severed and, that after severance, they may not be enforced. *R.C. 2950.031 and 2950.032 may not be applied to offenders previously adjudicated by judges under Megan's Law, and the classifications and community-notification and registration orders imposed previously by judges are reinstated.*" (Emphasis added.) Id. at ¶ 66

{¶ 20} Following its expansive language, the Supreme Court has not limited its holding in *Bodyke* to that case and to those sex offenders who had pending cases based on challenges to their reclassifications. Rather, the Supreme Court has applied *Bodyke* to all sex offenders who were reclassified by the attorney general under R.C. 2950.031 and 2950.032.

{¶ 21} For example, in *State v. Gingell*, 128 Ohio St.3d 444, 2011-Ohio-1481, Gingell was convicted of three counts of rape in 2000 and was originally classified as a sexually oriented offender. In accordance with S.B. 10, Gingell was reclassified by the attorney general as a Tier III sex offender, who was required to register every 90 days for life. Gingell was later prosecuted for failing to verify his address and failing to register a change of address; he pled guilty to failing to verify his address. Gingell appealed, claiming that the trial court erred in retroactively applying the current

version of R.C. 2950.99 (which made Gingell's offense a first-degree felony), rather than the version that was in effect at the time of his original classification. *Bodyke* was rendered during the pendency of Gingell's appeal.

{¶ 22} Although Gingell had not challenged his reclassification as a Tier III sex offender and had pled guilty to failing to verify his address in accordance with the S.B. 10's 90-day reporting schedule, the Supreme Court gave Gingell the benefit of *Bodyke*. The court reasoned: "[P]ursuant to *Bodyke*, Gingell's original classification under Megan's Law and the associated community-notification and registration order were reinstated. Therefore, the current version of R.C. 2950.06, which requires Tier III sexual offenders to register every 90 days, does not apply to Gingell. Since Gingell was charged after his reclassification and before *Bodyke*, there is no doubt that he was indicted for a first-degree felony for a violation of the reporting requirements under the AWA [S.B. 10]. Because the application of the AWA was based upon an unlawful reclassification, we reverse the judgment of the court of appeals and vacate Gingell's conviction for a violation of the 90-day address-verification requirement of R.C. 2950.06. Gingell remained accountable for the yearly reporting requirement under Megan's Law; whether he met that requirement is not a part of this case." *Gingell* at ¶ 8.

{¶ 23} Like the broad holding in *Bodyke*, the holding in *Williams* expressly applies to "any other sex offender who committed an offense prior to the enactment of S.B. 10." *Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, at ¶ 22. Considering this language in *Williams* and the Supreme Court's broad application of *Bodyke* in *Gingell*, we conclude that *Williams* must be applied to Eads, despite his failure to

challenge his classification under S.B. 10 in a direct appeal of his delinquency adjudication.

{¶ 24} In summary, Eads's classification as a Tier III sex offender by the juvenile court violated Ohio's Retroactivity Clause and is void. The prosecution for Eads's failures to verify his address and notify the sheriff's office of his new address was based on that unconstitutional classification. As a result, Eads cannot be prosecuted for failing to verify his address and to notify the sheriff's office of his new address as a Tier III offender.

{¶ 25} Finally, we cannot conclude that Eads's convictions for failing to verify his address and failing to notify the sheriff of a change of address are proper on the ground that Eads would have been required to verify his address and notify the sheriff of a change of address under Megan's Law. At this juncture, Eads has never been designated as a sexually oriented offender, habitual sexual offender, or sexual predator by a judge, and it is unclear what his designation would be.[1] Absent a sex-offender classification by the juvenile court, Eads's convictions for failing to verify his address and failing to register a change of address must be vacated.

{¶ 26} Eads's first assignment of error is sustained.

II

{¶ 27} Eads's second assignment of error states:

---

[1] A juvenile court's obligation to classify a juvenile sex offender is governed by portions of both R.C. Chapter 2152 and R.C. Chapter 2950 and involves a two-step process. First, the juvenile court must determine whether the juvenile is a juvenile offender registrant ("JOR") who is subject to classification and registration. If so, the juvenile court must determine the appropriate classification for the juvenile. The record reflects that Eads was 17 when he committed the rapes. Accordingly, the juvenile court was required to classify Eads as a JOR. See R.C. 2152.83(A)(1).

{¶ 28} "The trial court erred when it overruled the defendant's motion to reinstate community control sanctions and found mandatory time is required by statute."

{¶ 29} In light of our disposition of Eads's first assignment of error, Eads's second assignment of error is overruled as moot.

III

{¶ 30} The trial court's judgment will be vacated.

. . . . . . . . . .

Judgment vacated.


DONOVAN and HALL, JJ., concur.

HALL, Judge, concurring:

{¶ 31} Eads was separately charged with *failure to verify* his current residence address and *failure to notify* the county sheriff of a change of address, both occurring on or after November 20, 2010. Without doubt, because of the unique timing of his underlying conviction and sentencing, Eads should have been designated as one of the available sexual-offender levels under Megan's Law, rather than a tiered offender under the Adam Walsh Act, but he was not. He did not appeal his incorrect Tier III designation.

{¶ 32} However, on June 3, 2010, before the offense dates in Eads's indictment, the Ohio Supreme Court released *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, and announced: "We therefore hold that R.C. 2950.031 and 2950.032 are severed and, that after severance, they may not be enforced. R.C.

2950.031 and 2950.032 may not be applied to offenders previously adjudicated by judges under Megan's Law, and the classifications and community-notification and registration orders imposed previously by judges are reinstated." This decision announced the policy that Adam Walsh registration restrictions should not apply to Megan's Law offenders. In the more recent case of *State v. Gingell,* 128 Ohio St.3d 444, 2011-Ohio-1481, the Supreme Court applied the *Bodyke* holding, making Tier III registration inapplicable, even though Gingell had not independently challenged his Tier III reclassification at the time it was done. Those two cases, coupled with *State v. Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374 (holding that imposing Adam Walsh registration requirements on offenders whose act was before its enactment is unconstitutional) require that Eads's conviction be reversed.

{¶ 33} I would hold that a defendant can raise the issue of the Megan's Law-Adam Walsh switch in the direct appeal of his conviction for violation of his registration requirements. Not before us is whether a final conviction for violation of registration requirements can be collaterally attacked based on recent jurisprudence.

{¶ 34} Eads now has no registration requirement, and it may be required that the state of Ohio apply to the juvenile court for relief.

. . . . . . . . . .