[Cite as *State v. Caldwell*, 2012-Ohio-1091.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY   COUNTY

STATE OF OHIO                                                                   :

                                :         Appellate Case No. 24333

         Plaintiff-Appellee                                            :

                                :         Trial Court Case No. 09-CR-1702

v.                                                                                        :


                                :

ANDRE CALDWELL                                                    :        (Criminal Appeal from

                                :        Common Pleas Court)

         Defendant-Appellant                                        :

                                :

. . . . . . . . . . .

# O P I N I O N

Rendered on the 16th day of March, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
       Attorney for Plaintiff-Appellee

TYLER D. STARLINE, Atty. Reg. #0078552, Finlay, Johnson & Beard, Ltd., 260 North Detroit Street, Xenia, Ohio 45385
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

       **{¶ 1}** In February 1996, Andre Caldwell was convicted of third-degree felony

corruption of a minor and sentenced to prison. In July 2009, he was convicted for violating the address-verification requirement under the then-current sex offender registration and notification law, Ohio's Adam Walsh Act (AWA). In July 2010, Caldwell filed, pro se, a "Motion to Vacate and Set Aside the Judgment," targeting the failure-to-verify conviction, based on *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, in which the Ohio Supreme Court severed the AWA's reclassification provisions after concluding that they are unconstitutional. On the state's motion, the trial court dismissed Caldwell's "Motion to Vacate * * *" as an untimely petition for postconviction relief under R.C. 2953.21. Caldwell timely appealed the dismissal.[1]

{¶ 2}   In two assignments of error, Caldwell alleges that the trial court erred by dismissing the motion to vacate and erred by implicitly denying it.[2] The principal issue in the first allegation is whether the trial court's treating the motion as a statutory petition for postconviction relief was proper. We conclude that it was and, furthermore, that it was untimely. The principal issue in the second allegation is whether either *Bodyke*, as applied in *State v. Gingell*, 128 Ohio St.3d 444, 2011-Ohio-1481, 947 N.E.2d 192, or *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, decided during the pendency of this appeal, rendered Caldwell's failure-to-verify conviction void. We conclude that these decisions rendered his conviction not void but voidable.

## A. The Petition for Postconviction Relief

[1] A couple days after Caldwell filed his notice of appeal, he filed a motion in this Court for leave to file a delayed appeal of his 2009 conviction. The state moved to dismiss. Observing that Caldwell had filed the notice of appeal, we overruled his motion, sustaining the state's motion to dismiss.

[2] On December 22, 2011, Caldwell filed a motion for leave to file a reply brief instanter. The motion is granted. Although the reply brief was filed after this case was conferenced, we read and considered the brief before arriving at the decision in this opinion.

{¶ 3}  "Courts may recast irregular motions into whatever category necessary to identify and establish the criteria by which the motion should be judged." *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 12, citing *State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522, ¶ 10 ("Our decision in [*State v.*] *Reynolds*[, 79 Ohio St.3d 158, 679 N.E.2d 1131 (1997)] set forth a means by which courts can classify such irregular motions."). The Ohio Supreme Court has found that a motion meets the definition of a petition for postconviction relief in R.C. 2953.21(A)(1) when the motion "(1) [was] filed subsequent to [a defendant's] direct appeal, (2) claim[s] a denial of constitutional rights, (3) s[eeks] to render the judgment void, and (4) ask[s] for vacation of the judgment and sentence." *Reynolds* at 160 (motion captioned "Motion to Correct or Vacate Sentence"). Caldwell's motion was filed after his direct appeal could have been taken, claimed a constitutional violation based on *Bodyke*, sought to render his judgment of conviction void, and asked the trial court to vacate the judgment and sentence. Since Caldwell's motion meets the statutory definition of a postconviction-relief petition, the trial court properly treated it as such.

{¶ 4}  But Caldwell filed the motion to vacate too late. Because he did not appeal, Caldwell had 180 days after the time ended for filing an appeal in which to file a petition–which he did not do–subject to two exceptions–neither of which applies here. See R.C. 2953.21(A)(2). Caldwell's judgment of conviction was filed on July 30, 2009, and his time for direct appeal expired on August 29, 2009. He filed his motion to vacate on September 29, 2010, over a year later. Since the motion was untimely filed, the trial court could not consider it. *See* R.C. 2953.23(A) ("A court may not entertain a petition filed after the expiration of the [180-day] period prescribed in division (A) of that section [2953.21].").

{¶ 5}  Furthermore, even if the motion had been timely filed, it likely would have been

dismissed anyway because the *Bodyke* and *Williams* issues raised in it are barred by the doctrine of res judicata. Citing the Ohio Supreme Court's decision in *State v. Duling*, 21 Ohio St.2d 13, 254 N.E.2d 670 (1970), *vacated in part on other grounds*, *Duling v. Ohio*, 408 U.S. 936, 92 S.Ct. 2861, 33 L.Ed.2d 753 (1972), the Ninth District in *State v. Bolds*, 96 Ohio App.3d 483, 485, 645 N.E.2d 164 (9th Dist.1994), said that "where a defendant fails to raise questions about the constitutionality of a statute or ordinance, and such questions are subsequently decided in a case brought by another individual, the defendant is barred by the doctrine of res judicata from raising such questions in a postconviction proceeding." *Bolds* at 485, citing *Duling* at 16-17. The *Bolds* defendant was convicted under a municipal ordinance that the Ninth District subsequently held was unconstitutional. Based on this holding, the defendant filed for postconviction relief, which the trial court denied. The Ninth District affirmed, holding that the ordinance's constitutionality was an issue barred by res judicata. Also instructive is the Ohio Supreme Court's decision in *Reynolds.* In that case the defendant was convicted of aggravated robbery with a firearm specification. The defendant appealed and the appellate court affirmed. At the time of his appeal, controlling law in the appellate district did not require any independent evidence that a firearm was operable to prove a firearm specification (beyond the evidence needed to establish its use to prove aggravated robbery). Later, the Ohio Supreme Court held that to establish a firearm specification the state must prove that the firearm was operable, a holding that, in effect, reversed the appellate-court case on which the above controlling law was based. Several years later, the defendant filed a petition for postconviction relief based on the Court's holding. The trial court vacated the firearm-specification conviction, and the appellate court affirmed. On the state's appeal, the defendant argued that, since it was not until after his direct appeal that the controlling appellate-court case was reversed, res

judicata should not prevent the Court's later, reversing case from applying. Before the reversing case was decided, the defendant pointed out, there was no way he could have argued that its holding applied in his case. The Court rejected this argument. Citing *Duling*, the Court said that it was irrelevant that one of its decisions changed the controlling law on which the conviction was based. Nothing, said the Court, prevented the defendant from himself appealing the operability issue. That the controlling authority at the time of his appeal was the appellate court's decision, said the Court, did not bar the defendant from appealing the issue anyway.

{¶ 6}  Applying res judicata in these types of situations promotes the principle of finality. In *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996), the defendant was convicted of involuntary manslaughter, a conviction that was predicated on minor-misdemeanor traffic violations. The defendant timely appealed the involuntary-manslaughter conviction, arguing that a minor misdemeanor cannot serve as the predicate offense. The appellate court affirmed, and the Ohio Supreme Court declined to hear his appeal. A couple of years later, in another case, the Court held that a minor misdemeanor may not serve as a predicate offense under the involuntary-manslaughter statute. Based on this holding, the defendant filed a petition for postconviction relief. The Court denied relief. The Court held that the defendant could not use a postconviction-relief petition to relitigate the predicate-offense issue that he had fully litigated simply because a subsequent decision changed the law. *Id*. at 95, citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph seven of the syllabus. (*Duling* approved and followed this paragraph of *Perry*'s syllabus. *See Duling*, 21 Ohio St.2d at paragraph two of the syllabus.) This holding, said the Court, "underscores the importance of finality of judgments of conviction." *Id*. The Court then explained the public-policy basis:

Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. We have stressed that "[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts." *Id.*, quoting *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

**{¶ 7}**   Whether because his motion was untimely or because the constitutionality of his conviction is barred by res judicata, the trial court correctly determined that Caldwell is not entitled to postconviction relief.

**{¶ 8}**   The first assignment of error is overruled.

**B. The Court's Inherent Authority to Vacate Void Judgments**

**{¶ 9}**   Caldwell's primary contention is that his conviction is void. He argues that the trial court should have granted his motion to vacate under its inherent power to vacate a void judgment. *See Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 87 Ohio St.3d 363, 368, 721 N.E.2d 40 (2000), citing *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph four of the syllabus ("The authority to vacate a void judgment * * * constitutes an inherent power possessed by Ohio courts."). If the conviction was determined to be void, the timing of Caldwell's motion is inconsequential. It would have been void then, and void now. But, Caldwell's judgment of conviction is not void; it's only voidable.

1. *Background*

{¶ 10}   A few months after Caldwell's 1996 corruption-of-a-minor conviction, Megan's Law went into effect, significantly changing Ohio's sex-offender-registration-and-notification law. Sometime before he was released from prison in December 1999, Caldwell was classified under Megan's Law as a sexually oriented offender. Megan's Law required Caldwell to verify his residence address annually for ten years. In January 2008, the AWA replaced Megan's Law, and under the AWA, Caldwell was reclassified as a Tier-II sex offender. Caldwell did not appeal his reclassification. The AWA requires Tier-II offenders to verify their residence address every 180 days for 25 years. In June 2009, Caldwell pleaded guilty to a charge of failing to verify his address, and he was sentenced to three years in prison. Caldwell did not appeal this conviction.

{¶ 11}   After the time expired for direct appeal, and the 180-day period he had to file for postconviction relief ended, the Ohio Supreme Court decided the trio of cases that Caldwell cites. In June 2010, *Bodyke* held that the AWA's reclassification provisions were unconstitutional because they violated the separation-of-powers doctrine by requiring the attorney general to reclassify sex offenders who had already been classified by court order and whose classification had already been adjudicated by a court. As a remedy, the Court severed the provisions, saying that, "after severance, they may not be enforced." (Emphasis added.) *Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, at ¶ 66. That is, the provisions "may not be applied to offenders previously adjudicated *by judges* under Megan's Law." (Emphasis added.) *Id*. "And," continued the Court, "the classifications and community-notification and registration orders imposed previously *by judges* are reinstated." (Emphasis added.) *Id*. In January 2011, the Court applied *Bodyke*'s holding in *Gingell*. For a 1981 rape conviction, the *Gingell* defendant was originally classified under Megan's Law as a

sexually oriented offender and was reclassified under the AWA as a Tier-III sex offender. In late 2008, the defendant was convicted for violating the AWA's address-verification requirement. The defendant appealed his conviction. Under *Bodyke*, said the Court, the defendant's original classification and associated court orders were reinstated. "Therefore," the Court concluded, "the current version of R.C. 2950.06 [the verification requirement] * * * does not apply to [the defendant]." *Gingell*, 128 Ohio St.3d 444, 2011-Ohio-1481, 947 N.E.2d 192, at ¶ 8. Because the AWA had been applied based on an unlawful reclassification, the Court vacated the conviction. In July 2011, the Court went a step further in *Williams* and held that the AWA is unconstitutional as applied to any sex offender who committed the underlying sex offense before the AWA's 2008 enactment. The Court concluded that applying the AWA to such offenders violates the retroactivity clause of the Ohio Constitution. *Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, at ¶ 22.

{¶ 12}    *2. The finality of Caldwell's conviction*

{¶ 13}    Caldwell urges us to follow our decision in *State v. Eads*, 2d Dist. Montgomery App. No. 24696, 2011-Ohio-6307, in which we vacated a defendant's convictions for violating AWA registration requirements. In *Eads*, we held that, under *Williams*, because the defendant had committed his underlying sex offense before the AWA went into effect, his AWA classification was void. But we did not expressly hold that the defendant's *conviction* was void. And even if this could be inferred, *Eads* must be distinguished from the present case based on a key procedural difference: *Eads* was a direct appeal; the present case is a collateral attack. In *Eads* this author's concurrence agreed that a defendant may "raise the issue of the Megan's Law-Adam Walsh switch in the direct appeal of their conviction for violation of their registration requirements." *Id.* at ¶ 33 (Hall, J., concurring). But it was  pointed out that the

issue not before the *Eads* Court was "whether a final conviction for violation of registration requirements can be collaterally attacked based on recent jurisprudence." *Id*. That is now the precise issue before the Court in the present case.

{¶ 14}   The Ohio Supreme Court (and this Court) has said that """"in cases where the court has *undoubted jurisdiction of the subject matter, and of the parties*, [although] the action of the trial court * * * involv[es] an erroneous exercise of jurisdiction [ie. an error of law], which might be taken advantage of by direct appeal, or by direct attack, yet the judgment or decree is not void though it might be set aside for the irregular or erroneous exercise of jurisdiction if appealed from. *It may not be called into question collaterally*.""" (Emphasis sic.) *State v. Filiaggi*, 86 Ohio St.3d 230, 240, 714 N.E.2d 867 (1999), quoting *In re Waite*, 188 Mich.App. 189, 200, 468 N.W.2d 912 (1991), quoting *Jackson City Bank & Trust Co. v. Fredrick*, 271 Mich. 538, 544-546, 260 N.W. 908 (1935); *State v. Wilfong*, 2d Dist. Clark App. No. 2000-CA-75, 2001 WL 256326, *3-4 (Mar. 16, 2001) (quoting the same). Therefore, because Caldwell's pre-*Bodyke*, pre-*Williams* conviction for violating the AWA's registration requirements is, at best, an erroneous exercise of jurisdiction, meaning a legal error, it may not be collaterally attacked.

{¶ 15}   Our conclusion here is not inconsistent with this Court's recent decision in *State v. Montgomery*, 2d Dist. Montgomery App. No. 24450, 2012-Ohio-391. In *Montgomery*, the defendant was convicted of rape in 1987 and later adjudicated a sexually-oriented offender under Megan's Law, which required him to verify his address annually. When the AWA was enacted, the defendant was automatically reclassified as a Tier-III sex offender and required to verify his address every 90 days. In July 2009, the defendant violated his verification duty. He pleaded guilty to a charge of failure to verify and was sentenced to three years in prison. He did

not appeal the conviction or sentence. Over a year later, the defendant filed a motion to vacate his sentence based on *Bodyke*. Finding that the defendant's case was not on direct appeal when *Bodyke* was decided, the trial court declined to apply *Bodyke* retroactively. The court also said that "if the motion to vacate was actually intended to be a motion for postconviction relief, it was filed beyond the time limit set by the postconviction relief statute." *Montgomery* at ¶ 7.

{¶ 16}    On appeal, this Court determined that Montgomery's motion to vacate was "more correctly" characterized as a Crim.R. 32.1 motion to withdraw a plea and that the conviction should be reversed.  In support, the *Montgomery* case cited *State v. Pritchett*, 2d Dist. Montgomery App. No. 24183, 2011-Ohio-5978, in which the defendant filed, a year after his conviction under the AWA, a Crim.R. 32.1 motion to withdraw his plea based on *Bodyke*. The *Pritchett* decision had vacated Pritchett's sentence, holding that the sentence  was void and saying that it would be a manifest injustice for the defendant to continue serving a void sentence. But the underlying conviction in *Pritchett* had been upheld based on the conclusion that Pritchett's failure to provide a new address was valid under either Megan's Law or the AWA registration requirements.

{¶ 17}    Relying on *Pritchett*,  *Montgomery* vacated that defendant's guilty plea, sentence, and conviction itself. But *Montgomery* arrived at this conclusion after "review[ing] Appellant's arguments under the law governing a postsentence motion to withdraw a plea rather than under the more restrictive rules governing Civ.R. 60(B) motions or petitions for postconviction relief." *Montgomery* at ¶ 15. There was also a question of whether Montgomery could have been charged, at all, under either classification scheme. *Id.* at ¶ 23. Montgomery's motion to vacate was "more correctly" characterized by this court as a Crim.R. 32.1 motion to withdraw a plea. The trial court's judgment overruling Montgomery's motion had been based

on its conclusion   that *Bodyke* did not apply retroactively. While the trial court also concluded that the motion was untimely under the postconviction-relief statute, this conclusion was an alternative basis to deny Montgomery relief and not the basis of the court's judgment.

{¶ 18}   Caldwell's motion should not be reviewed under the same analysis. The trial court dismissed Caldwell's motion to vacate because it was untimely under the postconviction-relief statute. As we concluded above, the court's treatment of the motion as one for postconviction relief was a reasonable construction of the arguments made in the motion. The motion does not contain any factual material to demonstrate that Caldwell could not be charged, at all, for violation of reporting requirements. Accordingly, because we cannot simply disregard the definite and plainly proper characterization made by the trial court, *Montgomery* does not apply.

{¶ 19}   The second assignment of error is overruled.

## C. The Sentence

{¶ 20}   Although Caldwell does not separately challenge his sentence, such a challenge is fairly implied. Caldwell's sentencing entry does not specifically state that he was sentenced to a mandatory three years in prison as a result of the version of R.C. 2950.99 in effect *after* passage of Ohio's version of the AWA.(See   R.C. 2950.99(A)(1)(b) making a subsequent offense a 3 year minimum sentence)   But, the entry of Waiver's and Plea form filed July, 24, 2009 does refer to the offense, Caldwell's prior conviction, and a mandatory sentence of three years without eligibility for judicial release.   The indictment also includes Caldwell's prior conviction as an element. We can only conclude that the defendant was sentenced to three years in prison as a result of the version of R.C. 2950.99(A)(1)(b) made effective at the same time as adoption of the AWA. Therefore, while *Williams* did not render Caldwell's conviction

void, the established case law of this district, with which this author has disagreed, *see State v. Howard*, 195 Ohio App.3d 802, 2011-Ohio-5693, ¶14-21 (Hall, J., concurring in part and dissenting in part), holds that *Williams* does render the sentence in the AWA-Megan's Law switch void. *See e.g. Pritchett*. When a sentence is void under *Williams*, this Court has said that courts "'must ignore the procedural irregularities of the petition [for postconviction relief] and vacate the void sentence and resentence the defendant.'" *State v. Harrison*, 2d Dist. Montgomery App. No. 24471, 2011-Ohio-6803, ¶ 20, quoting *State v. Holcomb*, 184 Ohio App.3d 577, 2009-Ohio-3187, 921 N.E.2d 1077, ¶ 20.

**{¶ 21}** We therefore affirm the trial court's conviction of Caldwell. But we vacate the sentence and remand this case so that Caldwell can be sentenced under former law.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

FROELICH, J., concurring:

**{¶ 22}** I write separately only to stress that my concurrence is largely based on the record presented, or not presented, at the trial level by the Appellant. Further, the Ohio Supreme Court has accepted *State v. Brunning,* 8th Dist. Cuyahoga No. 95376, 2011-Ohio-1936 *appeal accepted*, 2011-Ohio-5129 (S.Ct. Case No. 2011-1066); *State v. Campbell,* 8th Dist. Cuyahoga No. 95348, 2011-Ohio-2281, *appeal accepted*, 2011-Ohio-6124 (S.Ct. Case No. 2011-1061); and *State v. Gilbert,* 8th Dist. Cuyahoga Nos. 95083 and 95084, 2011-Ohio-1928, *appeal accepted*, 2011-Ohio-6124 (S.Ct. Case No. 2011-1062); while not directly on point with this case, they hopefully will help clarify the quagmire that now exists for trial and appellate courts.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck, Jr.
Johnna M. Shia
Tyler D. Starline
Hon. Mary L. Wiseman